UNITED STATES, Appellee

v.

Louis J. DURANT III, Sergeant
U. S. Army, Appellant

No. 00-0664

Crim. App. No. 9801661

United States Court of Appeals for the Armed Forces

Argued March 28, 2001

Decided August 1, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in which
SULLIVAN, GIERKE, and BAKER, JJ., joined.  SULLIVAN, J., filed a
concurring  opinion.  EFFRON, J., filed a dissenting opinion.

<u>Counsel</u>

For Appellant:  <u>Colonel Adele H. Odegard</u> (argued); <u>Lieutenant
Colonel David A. Mayfield</u> and <u>Major Mary M. McCord</u> (on brief).

For Appellee:  <u>Captain Paul T. Cygnarowicz</u> (argued); <u>Colonel
David L. Hayden</u>, <u>Lieutenant Colonel Edith M. Rob</u>, and <u>Major
Anthony P. Nicastro</u> (on brief).

Military Judge:  Paul Johnston

<u>**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**</u>.

Chief Judge CRAWFORD delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of dereliction of duty and two specifications of larceny (totaling $8,800) for the improper use of an international merchants purchase authorization card (IMPAC), in violation of Articles 92 and 121, Uniform Code of Military Justice, 10 USC §§ 892 and 921.

The military judge sentenced appellant to a dishonorable discharge, confinement for 30 months, and reduction to Private E-1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 12 months, and reduction to E-1. In an act of clemency not required by the pretrial agreement, the convening authority also waived automatic forfeitures imposed pursuant to Article 58b, UCMJ, 10 USC § 858b, for 6 months.

In his matters submitted to the convening authority under RCM 1105, Manual for Courts-Martial, United States (2000 ed.),[1] appellant requested that his sentence to confinement be reduced to time served (about 5 months at the time of the convening authority action) and that his bad-conduct discharge be disapproved. The basis for this request was that his coactor,

---

[1] All Manual provisions are cited to the current versions, which are identical to the ones in effect at the time of appellant's court-martial.

Staff Sergeant (SSG) Cochrane, received a sentence that did not include either confinement or a discharge.

Appellant again raised the issue of disproportionately harsh sentencing before the Army Court of Criminal Appeals. Prior to deciding the case, the Court of Criminal Appeals granted appellant's motion for attachment of an authenticated copy of the record of trial in the general court-martial case of United States v. Staff Sergeant Garland J. Cochrane, Army No. 9900228. After review, the lower court affirmed the findings and sentence in appellant's case in an unpublished decision memorandum.

We hold that appellant has failed to show an abuse of discretion or obvious miscarriage of justice.

## I.  FACTUAL BACKGROUND

This case presents the unique situation of determining whether Article 66, UCMJ, 10 USC § 866, requires a Court of Criminal Appeals to mitigate a sentence, which that court otherwise determines to be appropriate, simply because an appellant's coactor receives substantially less punishment at his or her court-martial.[2]

---

[2] The granted issue in this case is:

> WHETHER APPELLANT'S DISPROPORTIONATELY HARSH SENTENCE, COMPARED WITH THE SENTENCE RECEIVED BY HIS CO-ACTOR, WARRANTS APPELLATE RELIEF.

Although charged differently by two separate commands, appellant and SSG Cochrane were essentially coconspirators. The stipulations of fact, introduced at the courts-martial of appellant and SSG Cochrane, show that both noncommissioned officers (NCOs) were IMPAC program cardholders. IMPAC cards are issued in order to buy supplies for a particular military unit efficiently; they are not to be used for personal purchases. SSG Cochrane was the approving official for purchases made by several cardholders, to include appellant, within his 63d Ordnance Battalion. SSG Cochrane was stationed at Fort Dix, New Jersey; appellant was assigned to Fort Monmouth, New Jersey. Each installation had its own general court-martial convening authority.

In January 1996, SSG Cochrane approached appellant, whom he supervised, and initiated a scheme: appellant would make unauthorized purchases of personal items with his IMPAC card for both himself and SSG Cochrane, and SSG Cochrane would approve the purchase of these items and authorize payment with government funds. Over the next 2 years, appellant made over 90 unauthorized purchases totaling more than $30,000 for himself, SSG Cochrane, and others. During this period of time, appellant progressively increased the amount of purchases that he illegally made with his IMPAC credit card, knowing that SSG Cochrane would approve the purchases and cover for him. The

record shows that SSG Cochrane received just over $4,000 worth of ill-gotten goods, purchased by appellant on his behalf. Appellant illegally purchased for himself, with SSG Cochrane's approval, goods totaling about $6,000.

SSG Cochrane was arraigned at Fort Monmouth, New Jersey, on November 24, 1998, the same day that appellant pled guilty to his charges before a military judge sitting as a general court-martial. During SSG Cochrane's arraignment, he requested and was granted the option of deferring his decision on forum selection. SSG Cochrane's next session of his general court-martial was held on February 24, 1999, at Fort Dix, New Jersey. In the interim, he negotiated a pretrial agreement with the Fort Dix general court-martial convening authority that limited his confinement to 15 months and any discharge adjudged to one no more severe than a bad-conduct discharge, and required the Government to dismiss four of the six charges against him.

The presiding judge, Judge Johnston, was the same judge who presided over appellant's trial. SSG Cochrane requested, as was his right, officer and enlisted members to sentence him following his guilty plea to one charge and specification of conspiracy with appellant, and eight specifications of larceny totaling over $4,000. The members sentenced SSG Cochrane to be reduced to E-3 and to pay a fine of $4,200. SSG Cochrane was

United States v. Durant, No. 00-0664/AR

discharged from the Army on March 26, 1999, with an honorable discharge, at the expiration of his term of service.

## II.  DISCUSSION

Congress has vested responsibility for determining sentence appropriateness in the Courts of Criminal Appeals.  "The power to review a case for sentence appropriateness, which reflects the unique history and attributes of the military justice system, includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions."  United States v. Sothen, 54 MJ 294, 296 (2001), citing United States v. Lacy, 50 MJ 286, 287-88 (1999).

The role of this Court in cases such as the one at bar is to determine, as a matter of law, whether a Court of Criminal Appeals abused its discretion or caused a miscarriage of justice in carrying out its highly discretionary "sentence appropriateness" role.  See id.; United States v. Fee, 50 MJ 290 (1999).  In so doing, we examine three questions of law:  "(1) whether the cases are closely related ...; (2) whether the cases resulted in 'highly disparate' sentences; and (3) ... whether there is a rational basis for the differences between [these] ... cases."  See Lacy, 50 MJ at 288.

Sentence comparison does not require sentence equation. See United States v. Ballard, 20 MJ 282 (CMA 1985); United States v. Snelling, 14 MJ 267 (CMA 1982).

6

Both sides agree that Lacy controls the disposition of this case, and that the courts-martial of appellant and SSG Cochrane are closely related. Appellate defense counsel maintain that the sentences are highly disparate on their face because one NCO received no punitive discharge and no confinement while the other received a punitive discharge and a year's confinement (after modification in accordance with the pretrial agreement). Citing Lacy, the Government contends that the sentences are not highly disparate: "The test in such a case is not limited to a narrow comparison of the relevant numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment." 50 MJ at 289.

In addition to Lacy, two other recent cases are instructive. In Fee, supra, the appellant received a sentence that included a dishonorable discharge and 6 years' confinement (confinement in excess of 36 months was suspended). Her husband received a sentence that included a bad-conduct discharge and 15 months' confinement. The convictions of both Fee and her husband stemmed from their illegal use and distribution of various controlled substances.

The Navy-Marine Corps Court of Criminal Appeals determined that the cases were closely related but the sentences were not highly disparate. The lower court then found two factors which

7

provided a rational basis for differences in the sentences.  See Fee, 50 MJ at 291.  This Court found it unnecessary to decide whether the two sentences were highly disparate, thus leaving the lower court's finding that the two sentences were not highly disparate.  We found that there was no abuse of discretion or miscarriage of justice in the lower court's judgment because the factors which were used to justify the differences in sentences were indeed logical and rational.

In United States v. Noble, 50 MJ 293 (1999), a case that involved differences in initial disposition of cases rather than sentence uniformity, this Court found no abuse of discretion or miscarriage of justice in the lower court's holding.  Noble, a Marine Corps Staff Sergeant, was convicted, among other things, of adultery, obstruction of justice, and fraternization.  His coactor in a sexual escapade with lower ranking women Marines was allowed to leave the Marine Corps with an honorable discharge, pursuant to an early-separation program, without ever facing a court-martial.  Even though Noble was sentenced to a bad-conduct discharge and 6 months' confinement, both the Court of Criminal Appeals and this Court found that appellant Noble's sentence was appropriate.

Unfortunately, we are forced to examine the issues of sentence disparity and appropriateness in this case without a considered, written opinion from the experienced judges of the

Court of Criminal Appeals.  See id. at 295; United States v.

Hawes, 51 MJ 258, 260 (1999); United States v. Cook, 46 MJ 37,

39 (1997).  In cases such as the one at hand, involving a unique

sentencing issue of first impression, analysis of the facts and

the law applicable to those facts by the Courts of Criminal

Appeals, with their special expertise, is extremely beneficial.

Sound articulation of their rationale by the Courts of Criminal

Appeals avoids speculation and promotes judicial economy.

The military justice system promotes sentence uniformity

through Article 66 and the requirement that the Courts of

Criminal Appeals engage in a sentence appropriateness analysis.

While the United States Federal District Courts attempt to

control disparate treatment of similarly situated defendants

through sentencing guidelines, analogies to the other federal

system of criminal justice are helpful.[3]

"[P]rosecutorial charging, plea, and motion practices are

... a well-spring of sentencing disparity....  [P]rosecutors

have always enjoyed great discretion in deciding what cases to

pursue and what charges to bring."  United States v. Rodriguez,

162 F.3d 135, 151 (1st Cir. 1998), quoting Kate Stith & José A.

Cabranes, Fear of Judging: Sentencing Guidelines in the Federal

Courts 140-41 (1998).  As this case reflects, charging decisions

---

[3] See, e.g., the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1987 (1984), codified at 18 USC § 3551 et seq. and 28 USC §§ 991-98.

by commanders in consultation with their trial counsel, as well as referral decisions by convening authorities after advice from their Staff Judge Advocates, can certainly lead to differences in sentencing.

Here, appellant was charged with two specifications of larceny covering two distinct periods of time (one for the 18 months prior to appellant's deployment to Bosnia and the other for the 6 months after his return from Bosnia). SSG Cochrane, on the other hand, was charged with 8 specifications of larceny. Accordingly, appellant was facing a maximum sentence that included 20 years' confinement for his larcenous activity, whereas SSG Cochrane was facing a potential confinement of 80 years for the larceny offenses. See para. 46e(1)(c), Part IV, Manual, supra. Yet appellant's thefts netted him a higher value of stolen goods.

Neither charging decision was unreasonable, nor the result of some type of invidious, constitutionally impermissible discrimination. Just as "disparity in sentencing among codefendants is not, by itself, a sufficient ground for attacking an otherwise proper sentence under the [federal sentencing] guidelines," the military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual. See United States v. Taylor, 991 F.2d 533, 536 (9th Cir. 1993),

10

quoting United States v. Hoy, 932 F.2d 1343, 1345 (9th Cir. 1991); see also United States v. Bonnet-Grullon, 212 F.3d 692 (2d Cir. 2000); United States v. Torres, 81 F.3d 900 (9th Cir. 1996); United States v. Alahmad, 211 F.3d 538 (10th Cir. 2000).

Similarly, federal courts have held that since the guidelines were enacted to promote uniformity in sentencing among the federal courts trying federal crimes, federal district courts may not depart from sentencing guidelines in order to equalize acknowledged disparities between state and federal sentences for coactors. See United States v. Snyder, 136 F.3d 65, 69-70 (1st Cir. 1998); United States v. Vilchez, 967 F.2d 1351 (9th Cir. 1992).

Without analysis from the court below as to whether the sentences are highly disparate, we will assume, without deciding, that appellant has met his burden of demonstrating the sentences are highly disparate. See United States v. Sothen, supra. Accordingly, we must determine whether or not the Government has presented a rational basis for the assumed high degree of disparity. Since the lower court failed to articulate its rationale for affirmance, we will affirm only where the respective records of trial clearly manifest differences in these two soldiers' cases that explain the respective sentences.

11

This is not a case where we must decide whether the proverbial scheming Fagin is more culpable than the boy pickpocket Oliver.[4] Appellant presented his sentencing authority with 10 years of credible service, to include tours in both the Gulf War and Bosnia. However, the three witnesses who testified on his behalf, to include the Company First Sergeant and Commander, were lukewarm in their assessment of appellant's future potential. Their testimony was to the effect that "appellant was above average for a supply sergeant"; "I would probably hire him again knowing about the crime"; "His duty performance was pretty good"; "I have known two supply sergeants, appellant was better than the first one." Appellant testified, expressed remorse for his crimes, explained that he committed the thefts because he did not think he would get caught, and admitted that he could "never regain that trust" which he had violated. He did not ask to remain on active duty.

The extenuation and mitigation presented at SSG Cochrane's trial, albeit summarized in his record of trial, is more substantive. The defense called four witnesses, ranging in rank from Sergeant First Class to Captain, who had known SSG Cochrane at different locations and times during his 10-year career. Captain Sargent, who was serving as a troop commander in the Third Armored Cavalry Regiment at the time of his trial

---

[4] See Charles Dickens's Oliver Twist (1838).

12

testimony, described SSG Cochrane's duty performance as "outstanding in every facet." He added: "SSG Cochrane's military character and professional demeanor was impeccable as far as appearance, soldier skills, everything that counts as being a soldier." Command Sergeant Major (CSM) Carey, the CSM of a Ranger training battalion at the time, testified to SSG Cochrane's exemplary military character and noted that SSG Cochrane "accomplished all missions." Significally, all of the active duty soldiers testifying on SSG Cochrane's behalf said he had either good or outstanding rehabilitative potential.

SSG Cochrane's wife and three children were also present in court. Mrs. Cochrane testified and begged the members not to send her husband to jail. Finally, SSG Cochrane testified that he would welcome a second chance to return to the Army at any rank. In his own summarized words, "there would not be a better soldier if given a second chance."

Our review is limited to the legal questions whether the cases are "closely related," whether the sentences are "highly disparate," and if so, whether there is a "rational basis" for the difference. Lacy, 50 MJ at 288. Having assumed that the cases are closely related and the sentences are highly disparate, the differences in mitigation evidence reviewed above demonstrate that there is a rational basis for the differences

in sentences.  Therefore, we must, as a court of law, decline to grant relief on the basis of Lacy.

While the mitigating evidence in the two cases may well explain why appellant and SSG Cochrane received different sentences, it does not answer appellant's claim that his sentence is neither uniform nor appropriate.  Sentence uniformity and appropriateness are matters exclusively within the providence of the Courts of Criminal Appeals.  In light of all the evidence, we conclude that the Court of Criminal Appeals did not abuse its discretion in reviewing appellant's sentence for appropriateness and uniformity.

The decision of the United States Army Court of Criminal Appeals is affirmed.

<u>United States v. Durant</u>, 00-0664/AR


SULLIVAN, Judge (concurring):

The Uniform Code of Military Justice provides that an accused may be tried by a court-martial of members or a court-martial composed of a military judge alone.  Article 16, UCMJ, 10 USC § 816.  This optional procedure alone may lead to court-martial sentences in closely related cases which are not the same, and that is what happened in this case.  Appellant's confederate received from a court of members a sentence consisting of a reduction from E-6 to E-3 and a fine of $4,200.  Appellant received from a military judge a sentence of a dishonorable discharge, confinement for 30 months, and reduction from E-5 to E-1.  The convening authority, pursuant to a pretrial agreement, reduced this sentence to a bad-conduct discharge, confinement for 12 months, and reduction to E-1.

The Court of Criminal Appeals is statutorily required to ensure that a military accused receives a correct and appropriate sentence.  Article 66(c), UCMJ, 10 USC § 866(c).  In <u>United States v. Lacy</u>, 50 MJ 286, 287-88 (1999), we recognized that the Court of Criminal Appeals is primarily responsible for ensuring at least "relative uniformity" in sentencing.  We said:

> The power to review a case for sentence
> appropriateness, including relative
> uniformity, is vested in the Courts of
> Criminal Appeals, not in our Court, which
> is limited to errors of law.  <u>Compare</u> Art.

> 66(c) with Art. 67(c), UCMJ, 10 USC §
> 867(c)(1994); see United States v.
> Christopher, 13 USCMA 231, 236, 32 CMR
> 231, 236 (1962).  With respect to
> reviewing the actions of the Courts of
> Criminal Appeals on issues of sentence
> appropriateness, our review is limited to
> preventing "obvious miscarriages of
> justice or abuses of discretion."  United
> States v. Dukes, 5 MJ 71, 73 (CMA 1978);
> see United States v. Henry, 42 MJ 231, 234
> (1995).

Nevertheless, in Lacy, we further delineated when our Court could find an abuse of discretion by the appellate court below. We said:

> Our review of a decision from a Court of
> Criminal Appeals in such a case is limited
> to three questions of law: (1) whether the
> cases are "closely related" (e.g.,
> coactors involved in a common crime,
> servicemembers involved in a common or
> parallel scheme, or some other direct
> nexus between the servicemembers whose
> sentences are sought to be compared); (2)
> whether the cases resulted in "highly
> disparate" sentences; and (3) if the
> requested relief is not granted in a
> closely related case involving a highly
> disparate sentence, whether there is a
> rational basis for the differences between
> or among the cases.

Id at 288.  If evidence exists in the record from which the service appellate court could conclude that a rational basis existed for a "highly disparate" sentence in a closely related case, we must affirm the Court of Criminal Appeals denial of sentence relief.

Turning to the evidence of record in this case, I note that appellant did not request to remain in the Army, but his confederate did. Compare Record at 98 (appellant's unsworn statement) with Cochrane Record at 32 (SSG Cochrane's unsworn statement). Appellant also had a record of military performance that was obviously inferior to his confederate. Compare Record at 85 (appellant's first sergeant noted that he would try to replace appellant as Supply Sergeant if his company went to war) with Cochrane Record at 28 (SSG Cochrane's Command Sergeant Major stated, "SSG Cochrane's duty performance during that time [in Hawaii] was excellent. SSG Cochrane's military character was exemplary. . . . SSG Cochrane explained what he did about stealing government property. I believe SSG Cochrane has good rehabilitative potential. I know he can still do great things for the Army."). Appellant also stole merchandise worth more money than SSG Cochrane did. Compare Record at 20-21 (stipulating that appellant stole goods valued at at least $30,000) with Cochrane Record at Charge Sheet (charging SSG Cochrane with theft of property worth $4,144.44). Finally, SSG Cochrane offered powerful mitigation witness testimony which appellant did not. See, e.g., Cochrane Record at 26 (SSG Cochrane's supervisor at the Casualty Mortuary Affairs Office noted his "excellent" duty performance and "positive" attitude, even in light of a pending court-martial). Based on this evidence in the record, I conclude that there is a rational basis

3

for the disparity between the sentences of appellant and SSG Cochrane, per our holding in Lacy.


    Finally, I personally share Judge Effron's view that articulation by the Court of Criminal Appeals of the basis for its conclusion that highly disparate sentences in closely related cases are rational will promote the interests of fairness in the military justice system.  Nevertheless, as I said before, I am "aware of no requirement of law that appellate courts in general or a court of military review in particular must articulate its reasoning on every issue[.]"  United States v. Matias, 25 MJ 356, 363 (CMA 1987).  And I refuse to do so under the circumstances in this case today.  Accordingly, I affirm.

United States v. Durant, 00-0664/AR

EFFRON, Judge (dissenting):

    As noted in the majority opinion, our decision in United States v. Lacy, 50 MJ 286 (1999), provides that the issue of sentence appropriateness raises three questions of law:  (1) whether the cases are closely related; (2) whether the sentences are highly disparate; and (3) whether there is a rational basis for the disparity.

    There is no dispute that appellant's case was closely related to that of his coactor.  The highly disparate nature of the sentences is reflected in the fact that the coactor received no discharge, no confinement, a reduction to E-3, and a fine of $4,200, while appellant's sentence included a punitive discharge and confinement for 15 months.

    With respect to the question of whether there is a rational basis for the disparity, the responsibility for making such a determination under Article 66, UCMJ, 10 USC § 866, rests with the Court of Criminal Appeals, not with this Court.  I agree that the Courts of Criminal Appeals are not required to articulate reasons for their sentence-appropriateness determinations in all cases.  When there are closely related cases involving highly disparate sentences, however, it is particularly critical for the lower court to provide some explanation of its decision on the question of a rational basis for the disparity.  This is not an unduly onerous task; there

are relatively few cases involving coactors, and even fewer involving highly disparate sentences.

In such a case, a Court of Criminal Appeals possesses a unique expertise that places it in an ideal position to determine whether there exists a rational basis for the sentence disparity.  This special expertise is derived from a number of factors, such as the regularity with which the Courts of Criminal Appeals examine cases for sentence appropriateness, relative to the small number of sentence-appropriateness cases decided by our Court; and the active-duty status of most judges on the Courts of Criminal Appeals, which typically affords them recent field experience, including exposure to a broad range of courts-martial and alternative dispositions not within the routine jurisdiction of our Court.

A Court of Criminal Appeals might properly determine that a sentence adjustment is not required where the sentence at issue is found to be objectively appropriate and where it finds that the disparity is largely the result of the coactor's relatively lenient sentence.  We cannot assume that the Court of Criminal Appeals made such a determination in this case, particularly in view of factors that heighten concerns about the disparity between appellant's sentence and that of his coactor.  For example, factors such as the status of the coactor as the more senior noncommissioned officer —— and the fact that the coactor

2

was the person who initiated the crime —— underscore the need for a reasoned explanation of the already significant disparity between the sentences.  In such as the present appeal, confidence in the fairness of the military justice system requires an articulation by the Court of Criminal Appeals of its reasons for affirming appellant's sentence.  I respectfully dissent, and would remand this case to the Court of Criminal Appeals.