# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Anthony M. MONTUORO
### Electrician's Mate Third Class (E-4), U.S. Coast Guard

## CGCMS 24396

## Docket No. 1307

## 12 November 2009

Special Court-Martial convened by Commander, Eighth Coast Guard District. Tried at Corpus Christi, Texas, on 7 February 2008.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Marc A. Zlomek, USCG |
| Assistant Trial Counsel: | LCDR Curtis E. Borland, USCG |
| Defense Counsel: | LT Dylan T. Burch, JAGC, USN |
| Assistant Defense Counsel: | LCDR Andrea K. Lockhart, JAGC, USN |
| Appellate Defense Counsel: | LT Jeffery S. Howard, USCG |
| Appellate Government Counsel: | LCDR Brian K. Koshulsky, USCG |

## BEFORE
## McCLELLAND, McTAGUE & CHANEY
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of conspiracy, in violation of Article 81, Uniform Code of Military Justice (UCMJ); one specification of failure to obey a general order, in violation of Article 92, UCMJ; one specification of false official statements, in violation of Article 107, UCMJ; and one specification each of obstruction of justice and wrongfully providing a minor with alcoholic beverages, in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for nine months, reduction to E-1, and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged.

Before this Court, Appellant has assigned as error that the adjudged sentence of nine months confinement, an unsuspended punitive discharge, and reduction to E-1 are inappropriately severe in this case, in light of the sentence adjudged to Appellant's co-actor. We find no error and affirm.

The charges arose from Appellant's attempt to cover up the circumstances surrounding the death of shipmate Seaman Apprentice Thomas C. Crandon, who was under 21, after Appellant and another shipmate provided him with alcoholic beverages. Appellant asserts that his co-actor, Seaman (E-3) Huey, was tried by summary court-martial and convicted, pursuant to his pleas of guilty, of violating Article 92, UCMJ, by wrongfully consuming alcohol while in an immediate recall status – a conviction identical to one of Appellant's. In support of his assertion, Appellant moved to attach the Summary Court-Martial Officer's memorandum summarizing Seaman Huey's trial, as well as Seaman Huey's Pretrial agreement, Stipulation of Fact, and Testimonial Grant of Immunity.[1] The Government, in its Answer, supported Appellant's motion and moved to attach Seaman Huey's charge sheet. We granted the motions, and thereby have before us essentially the record of trial in Seaman Huey's summary court-martial. In addition to the violation of Article 92, UCMJ, Seaman Huey was charged with conspiracy, false official statements, and wrongfully providing a minor with alcoholic beverages, in specifications identical to, or, as to false official statements, on the same subject as, those to which Appellant pleaded guilty. These three charges were withdrawn and dismissed pursuant to the pretrial agreement. Seaman Huey was sentenced to restriction for twenty days and reduction to E-2.

When an appellant shows that his or her case is "closely related" to another and where the two sentences are "highly disparate," the Government has the burden to "show there is some rational basis for the disparity." *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F. 1999). This Court's "sentence review function . . . is highly discretionary." *Id.* Sentence comparison is only required "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Id. (*quoting *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A. 1985)).

---

[1] The Grant of Immunity was apparently intended to ensure Seaman Huey's testimony against Appellant.

The present pair of cases, like the pair in *United States v. Noble*, 50 M.J. 293 (C.A.A.F. 1999), "involves differences in initial disposition rather than sentence uniformity." *Id.* at 295. For that reason, arguably we are not within the *Lacy* framework. Nevertheless, we note that the Government concedes that the two cases are closely related.[2]

It is reasonable to say that the two cases are closely related, as falling within an example provided in *Lacy*, 50 M.J. at 288 ("coactors involved in a common crime"). However, we cannot ignore the fact that Appellant was convicted of four other offenses in addition to the offense of which Seaman Huey was convicted. This difference could be viewed as breaking the closely-relatedness of the two cases, or it could be applied later in the analysis as constituting a rational basis for any disparity in the sentences.

Indeed, the difference in convictions cannot be separated from the difference in initial dispositions, since Seaman Huey's forum and outcome was pursuant to a pretrial agreement. In the absence of any indication of invidious discrimination or other inappropriate action on the part of the convening authorities of the two cases, we think it is inappropriate for us to second-guess the initial dispositions.

To be sure, the Government has invited us to do so, in what we can only assume is an abundance of caution. In its Answer, the Government is at pains to show that the prosecutorial decisions were reasonable, to the point of offering several facts not in evidence, many of which are clearly in aggravation of Appellant's offenses. We decline to consider facts not in evidence against Appellant. At the same time, we acknowledge the Government's difficulty if it must justify the initial dispositions of companion cases. We do not believe such justification is required. No doubt our "highly discretionary sentence review function" under Article 66, UCMJ, noted in *Lacy*, 50 M.J. at 288, and *Noble*, 50 M.J. at 294, would allow us to consider the initial dispositions and their justification, but we are inclined to exercise restraint rather than invite extended litigation concerning that part of the court-martial process. To fairly pursue a

---

[2] The Government goes on to assert that Appellant's sentence was not "highly disparate" compared to Seaman Huey's sentence. This assertion is difficult to credit on the plain meaning of the term "highly disparate."

review of initial dispositions would call for even more information than the Government has attempted to provide, and would venture far afield from the normal appellate process, even considering our broad remit under Article 66.[3]

In any event, it is clear from the record of Appellant's trial that as between him and Seaman Huey, he was the petty officer, the leader, with concomitant greater responsibility. Furthermore, he was the instigator of the conspiracy pursuant to which both he and Seaman Huey made false official statements, as is reflected in his conviction of obstruction of justice. These two facts clearly constitute a rational basis for the disparity in outcomes. Hence, even if Seaman Huey had been found guilty of the three charges that were dismissed, the disparity would not warrant relief, in our view.

In sum, even if the two cases were closely related and their outcomes "highly disparate," we find a rational basis for the disparity. We further find Appellant's sentence appropriate.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges McTAGUE and CHANEY concur.



For the Court,


Amber K. Riffe
Clerk of the Court

---

[3] We note that the Court of Appeals for the Armed Forces considered the reasonableness of the charging decisions in *United States v. Durant*, 55 M.J. 258, 261 (2001), but we perceive that their consideration was limited to the question of whether there was what we have called, above, "any indication of invidious discrimination or other inappropriate action."