# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39604**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Andrew D. SCHMIDT**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 5 February 2020

————————————

*Military Judge:* Matthew D. Talcott.

*Approved sentence:* Bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 14 September 2018 by GCM convened at Cannon Air Force Base, New Mexico.

*For Appellant:* Lieutenant Colonel Garrett M. Condon, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Peter F. Kellett, USAF; Justin A. Miller (legal intern);[1] Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges*.

Judge LEWIS delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

---

[1] Mr. Miller was at all times supervised by an attorney admitted to practice before this court.

LEWIS, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and a pretrial agreement (PTA), of nine specifications of wrongful use, distribution, and possession of controlled substances in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 12 months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.[3]

Appellant raises two assignments of error: (1) whether his sentence is inappropriately severe and (2) whether his sentence to forfeiture of all pay and allowances is lawful. We find no prejudicial error and affirm the findings and sentence.[4]

## I. BACKGROUND

Appellant's illegal drug activity spanned more than 18 months of his five-and-a-half-year Air Force career. Generally, Appellant used and distributed drugs while attending various music festivals and similar events in California, New Mexico, and Texas. He attended these events with civilian friends or with fellow Airmen from Cannon Air Force Base (AFB), New Mexico.

Appellant's wrongful use of controlled substances included cocaine, lysergic acid diethylamide (LSD), 3,4-methylenedioxymethamphetamine (MDMA), and psilocybin. Appellant wrongfully distributed LSD to two civilian friends in Dallas, Texas. He wrongfully distributed MDMA to a total of four Cannon AFB Airmen both while on Cannon AFB, New Mexico and while in Albuquerque,

---

[2] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Pursuant to the pretrial agreement, the convening authority dismissed with prejudice one specification alleging wrongful possession of marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, and one charge and specification alleging violation of a lawful general regulation by possessing a synthentic hallucinogen with intent to use to alter mood or function, in violation of Article 92, UCMJ, 10 U.S.C. § 892. The remaining PTA terms did not affect the sentence the convening authority could approve.

[4] On 5 November 2019, Appellant submitted a motion for "expedited review." We denied Appellant's motion and treated his request as a demand for speedy appellate review. This opinion is being issued five months before the 18-month standard for a presumptively unreasonable delay in appellate review set in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006).

New Mexico. Appellant also wrongfully distributed psilocybin to a civilian in exchange for $100.00 in El Paso, Texas.

Eventually, Appellant's drug activity came to the attention of agents from the Air Force Office of Special Investigations (AFOSI). After investigating Appellant for several months, the investigation culminated with a subject interview of Appellant on 7 November 2017, and a search of his home in Clovis, New Mexico. In his subject interview with AFOSI, Appellant waived his rights under Article 31, UCMJ, 10 U.S.C. § 831, and agreed to answer questions. Appellant was not forthcoming initially, but eventually admitted the extent of his illegal drug activity. During the search of Appellant's home, AFOSI agents seized 22 capsules containing psilocybin from Appellant's freezer and 5 capsules of MDMA from underneath his bathroom sink. AFOSI agents also seized thousands of empty capsules, a grinder, and a scale during the search of Appellant's home. Appellant admitted that he would purchase MDMA and psilocybin and package the drugs into capsules for "personal use."

## II. DISCUSSION

### A. Sentence Appropriateness

#### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

When arguing sentence disparity and asking us to compare his sentence with the sentences of others, Appellant bears the burden of demonstrating those other cases are "closely related" to his, and if so, that the sentences are "highly disparate." *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Cases are "closely related" when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* The test for whether sentences are "highly disparate" is "not limited to a narrow comparison of the relevant numerical values of

the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment." *Id.* at 289. If an appellant meets that burden, then the Government must show a rational basis for the sentence differences. *Id.* at 288. Sentence comparison does not require sentence equation. *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001) (citation omitted).

The military justice system "must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual." *Id.* at 261 (citations and internal quotation marks omitted). "[C]harging decisions by commanders in consultation with their trial counsel, as well as referral decisions by convening authorities after advice from their Staff Judge Advocates, can certainly lead to differences in sentencing." *Id.*

During our Article 66(c), UCMJ, review of sentence appropriateness, we "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citation omitted).

### 2. Analysis

Appellant asserts his sentence "is inappropriately severe and is otherwise unjust and highly disparate to the outcomes of his coactors' cases." Appellant points to four Cannon AFB Airmen and asserts that he can meet his burden to show their cases are closely related because "this was a group of friends, all Airmen from the same base, who socially used controlled substances on and off together during the timeframe charged in this case." We are not persuaded.

We granted Appellant's motion to attach documents which provide us limited information about the other four cases.

- A1C DN faced a special court-martial but no sentence was adjudged as his case was "dismissed after arraignment." The dismissal was on 22 February 2018.
- A1C EL was sentenced at a special court-martial to a bad-conduct discharge, 30 days of confinement, and reduction to the grade of E-1 on 27 March 2018.
- A1C SL was sentenced at a special court-martial to a bad-conduct discharge and reduction to the grade of E-1 on 24 April 2018.
- Amn JM received nonjudicial punishment and was reprimanded for "drug use" and reduced to the grade of E-1 on 11 December 2017.

The stipulation of fact in Appellant's case includes references to A1C DN, A1C EL, A1C SL, and Amn JM and their involvement in the offenses to which Appellant pleaded guilty.

- A1C DN used LSD with and distributed LSD to Appellant. A1C DN used MDMA with Appellant, distributed MDMA to Appellant, and received MDMA from Appellant.
- A1C EL used LSD with Appellant. A1C EL received MDMA from Appellant and used it.
- A1C SL received MDMA from Appellant and used it. A1C SL also used psilocybin with Appellant.
- Amn JM received MDMA from Appellant and used it. Amn JM also used psilocybin with Appellant.

Notably missing from the documents submitted by Appellant or his record of trial are the offenses the four Airmen faced on their charge sheet or nonjudicial punishment form, the dates of those offenses, and the locations of those offenses. We consider the absence of this information in determining whether Appellant has met his burden of showing the four cases are closely related.

For A1C DN, we have no information in Appellant's record of trial on the circumstances surrounding the dismissal of his charges to show it was unreasonable or "the result of some type of invidious, constitutionally impermissible discrimination." *See Durant*, 55 M.J. at 261 (discussing disparity in charging larceny offenses in two cases which impacted maximum punishment). We decline to speculate on why the special court-martial convening authority chose to dismiss the allegations against A1C DN. A1C DN did not testify in Appellant's case and the record of trial in Appellant's case provides no clear explanation for the dismissal. With so little information regarding A1C DN's actual case, Appellant has not met his burden to show his case is closely related to A1C DN's.

We turn next to the nonjudicial punishment that Amn JM received. The United States Court of Military Appeals stated the "principle of sentence comparison would seemingly demand comparison" to a coactor's nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815. *United States v. Snelling*, 14 M.J. 267, 269 (C.M.A. 1982). In *Snelling*, the coactor testified at trial about receiving an Article 15 for his role in the robbery for which Snelling was tried and sentenced. *Id.* at 268. The coactor's involvement consisted of catching the victim's purse when Snelling threw it to him and successfully running away with the purse. *See id.* This matter was raised in the staff judge advocate's advice to the convening authority and the trial defense counsel's comments on the advice. *See id.* Unlike the coactor in *Snelling*, Amn JM did not testify in Appellant's court-martial. Appellant did not provide any information on the offenses for which she was punished so we do not know whether she was punished for any offenses involving Appellant. Similarly, we do not know the rea-

sons why Amn JM received nonjudicial punishment and we decline to speculate about them. Appellant has not met his burden to show that Amn JM's case was closely related to his.

This leaves us with A1C EL and A1C SL. Appellant provided the ACM numbers for both of their cases and noted their appeals were pending with our court at the time Appellant filed his asssignments of error. If Appellant believes the citation to an ACM number requires us to scour another record of trial for evidence to assist him in meeting his burden, then he is mistaken. A better practice was used in *United States v. Nettles* where the appellant moved to attach the Air Force Form 1359, Report of Result of Trial, which included the pleas, findings, and sentence of another officer's case. No. ACM 38336, 2014 CCA LEXIS 254 at *16 (A.F. Ct. Crim. App. 21 Apr. 2014) (unpub. op.).

This is not to say that an appellant cannot cite our opinions and their contents to provide support for his position. In this case, Appellant only cited the ACM number which is understandable as we had not released the opinions in A1C SL's and A1C EL's cases at the time Appellant filed his assignments of error. Under these circumstances, we find it appropriate to consider the contents of our opinions, but not the records of trial, in these two cases.

To this end, we reviewed our opinion in A1C SL's case. It does not assist Appellant in meeting his burden. The per curiam opinion does not specify the charged offenses or timeframes or any of the evidence presented during sentencing about A1C SL. *United States v. Leverenz*, No. ACM S32539, 2019 LEXIS 233 (A.F. Ct. Crim. App. 21 May 2019) (unpub op.).

We reviewed A1C EL's opinion as well. *United States v. Lepore*, No. ACM S32537, 2020 LEXIS 21 (A.F. Ct. Crim. App. 24 Jan. 2020) (unpub. op.). It provides more information, but is still insufficient to support Appellant in meeting his burden. The opinion lists the offenses to which A1C EL pleaded guilty. One offense, which appears on its face to overlap with Appellant's case, is A1C EL's wrongful use of MDMA on divers occasions. Appellant pleaded guilty and was sentenced to distribution of MDMA. He stipulated that he gave MDMA to A1C EL on multiple occasions. The stipulation details one of those distributions, when Appellant gave A1C EL a half-pill called "pink shark" in Albuquerque, New Mexico, which she consumed. Arguably, A1C EL's offense of use of MDMA appears to have a direct nexus with Appellant's distribution of MDMA. The problem is that Appellant provided us nothing to show that A1C EL was sentenced for using MDMA that he distributed and we see nothing in our opinion to draw this conclusion. When we consider the other offenses A1C EL faced, the comparison between the two cases becomes murkier.

A1C EL faced no charge for using LSD. However, Appellant was convicted of using LSD on divers occasions within the continental United States. He stipulated that he used LSD with A1C EL in Albuquerque, New Mexico. However, Appellant did not mention this LSD use with A1C EL during his guilty plea inquiry with the military judge. Instead, he mentioned two LSD uses with civilians in Texas as the basis for accepting his plea of guilty to this offense. Even if Appellant's use of LSD with A1C EL accounted for some portion of his sentence, A1C EL was not sentenced for this offense at all. Under these circumstances, we do not consider A1C EL to be a coactor in Appellant's use of LSD, despite his stipulation of fact. We have nothing before us on why A1C EL was not charged with using LSD. We do note that Appellant's trial was more than five months after A1C EL's trial and charges were not preferred in Appellant's case until a month after A1C EL's trial concluded. We are not suggesting this time difference accounts for the difference in charging schemes as regardless of the reasons for the differences, Appellant has not attempted to show the charging decisions made between his case and A1C EL's case were unreasonable. Appellant does not allege the differences in charging were "the result of some type of invidious, constitutionally impermissible discrimination." *See Durant*, 55 M.J. at 261. The LSD use offense in Appellant's case provides little assistance to help him meet his burden of showing A1C EL's case is closely related.

Finally, A1C EL pleaded guilty to wrongful use of cocaine, wrongful use of marijuana, and wrongful distribution of marijuana. These three offenses appear wholly unrelated to any charged offense in Appellant's case.

It is possible that there is a nexus between A1C EL and Appellant and Appellant's record shows the appearance of a nexus on two offenses—the distribution of MDMA and use of LSD. However, we are not certain that A1C EL was sentenced by the military judge in her case for any offense where Appellant was actually involved. On the whole, we find Appellant failed to meet his burden to show he and A1C EL were "coactors" in a common crime. We observe no common or parallel scheme between the two Airmen. There is a possible nexus with two offenses, but there is no nexus at all with the majority of the offenses. We do not find this to be one of "'those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *See Sothen*, 54 M.J. at 296.

We realize that we may consider any or all of the four cases cited even if they are not closely related to Appellant's. We decline to do so. "The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Ballard*, 20 M.J.

282, 283 (C.M.A. 1985)). We find no reason to deviate in this case from the general rule set out in *LeBlanc*.

Even if Appellant is correct that he has met his burden to show one or more of the cited cases is closely related and we assume *arguendo* that the adjudged sentence or the lack of sentence shows they are highly disparate, we would not grant relief as there is a rational basis for any sentence disparity. Appellant's record of trial shows there was no involvement by any of the four Airmen in the following offenses for which he was sentenced: (1) Appellant's wrongful use of cocaine with civilians; (2) Appellant's wrongful distribution of psilocybin to a civilian in exchange for $100.00; (3) Appellant's wrongful distribution of LSD to civilians; (4) Appellant's wrongful possession of five capsules of MDMA at his home in Clovis, New Mexico; and (5) Appellant's wrongful possession of 22 capsules of psilocybin also at his home. Together, these offenses accounted for 45 years of the 75 years of maximum confinement that Appellant faced. We conclude the Government met their burden to show a rational basis for the differences between Appellant's adjudged sentence and the cases he cited after consideration of the offenses, the facts and circumstances, and the depth of Appellant's illegal involvement with controlled substances. *See Lacy*, 50 M.J. at 288.

Turning to the particular circumstances of Appellant's case, his involvement with several illegal drugs over an extended period of time was apparent from the evidence presented during his trial. We express particular concern with Appellant's distribution of three different illegal drugs to both military members and civilians alike. Further, the drugs found in Appellant's house and the paraphernalia he used to package psilocybin and MDMA were illustrative of the extent of his drug involvement. To his credit, Appellant kept his involvement with controlled substances from affecting his work performance. He performed in a professional manner with excellent results in his assigned duties until the day before his trial. We fully considered the extenuation and mitigation evidence presented in his case. However, this evidence does not render his sentence inappropriately severe, and this court has no authority to engage in clemency. *Nerad*, 69 M.J. at 146. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude that the sentence is not inappropriately severe.

## B. Adjudged Forfeitures

### 1. Law

We review whether an approved sentence conflicts with the UCMJ de novo. *See United States v. Warner*, 25 M.J. 64 (C.M.A. 1987). In *Warner*, the courts of military review were instructed not to "affirm as appropriate a sentence

which imposes total forfeitures, when confinement has not been adjudged." 25 M.J. at 67. The portion of Warner's sentence which provided for total forfeitures was amended to read "forfeiture of two-thirds pay as E-1 per month until the discharge is executed." *Id.*

"When an accused is not serving confinement, the accused should not be deprived of more than two-thirds pay for any month as a result of one or more sentences by court-martial and other stoppages or involuntary deductions, unless requested by the accused." Rule for Courts-Martial (R.C.M.) 1107(d)(2), Discussion. We have stated "[i]t is not settled whether this provision refers only to someone who has *never* been sentenced to confinement, or instead, also includes an accused who has been sentenced to confinement but has completed that portion of his sentence." *United States v. Craze*, 56 M.J. 777, 779 (A.F. Ct. Crim. App. 2002) (citation and quotation marks omitted). When an Appellant "has not demonstrated that he was deprived of more than two-thirds pay for any month during which he was not in confinement" then his "case is not ripe for our review because there is no case or controversy to decide." *Id.*

**2. Analysis**

Appellant claims the sentence adjudged and approved in his case has the identical violation as *United States v. Stewart*, 62 M.J. 291 (C.A.A.F. 2006). We disagree. In *Stewart*, the adjudged sentence included 15 months of confinement, total forfeitures of all pay and allowances, and reduction to the grade of E-1. *Id.* at 292. The United States Court of Appeals for the Armed Forces (CAAF) stated the threshold question was "what effect should be given to a sentence to forfeiture of all pay and allowances where no time limit is specified and the subject returns to a duty status post-confinement." *Id.* at 293. Such a threshold question is not necessary to reach in Appellant's case. Appellant received a bad-conduct discharge from the military judge. After the general court-martial convening authority approved the bad-conduct discharge at action, he stated "[u]nless competent authority otherwise directs, upon completion of the sentence to confinement, AIRMAN BASIC SCHMIDT will be required, under Article 76a, UCMJ to take leave pending completion of appellate review."

Unlike the CAAF in *Stewart*, we have no expectation that Appellant would return to a duty status post-confinement for some indefinite period of time. Instead, we expect he may need to out-process from the Air Force and sign his involuntary appellate (excess) leave paperwork in accordance with Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 13K (18 Jan. 2019, as amended by AFGM 2019-02, 30 Oct. 2019)) and Air Force Instruction 36-3003, *Military Leave Program*, ¶ 4.2.2. (11 May 2016, as amended by AFGM 2018-01, 6 Jun. 2018, reissued 6 Jun. 2019).

Appellant has not submitted a declaration to this court alerting us that since his release from confinement he has been returned to a duty status instead of being promptly placed on excess leave. Therefore, we conclude Appellant has not demonstrated that he was deprived of more than two-thirds pay for any month during which he was not in confinement, and this assignment of error is not ripe our review because there is no controversy to decide. *See Craze*, 56 M.J. at 779.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[5]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[5] We note three errors in the promulgating order. First, Appellant's rank is misspelled. Second, Appellant's organization is missing its numerical designation. Third, Charge II is incorrectly identified as a violation of Article 112a, UCMJ, instead of Article 92, UCMJ. We direct the publication of a corrected court-martial order to remedy the errors.