*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, HACKEL, and DALY
Appellate Military Judges

————————————

**UNITED STATES**
*Appellee*

**v.**

**Roger O. ROACHE, Jr.**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202200128**

————————————

Decided: 9 November 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Adam M. King

Sentence adjudged 31 January 2022 by a general court-martial convened at Camp Foster, Okinawa, Japan, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, forfeiture of all pay and allowances, confinement for 12 years, and a dishonorable discharge.[1]

————————————

[1] Appellant was credited 249 days of pretrial confinement.

For Appellant:
*Major Joshua P. Keefe, USMC*

For Appellee:
*Lieutenant Ebenezer K. Gyasi, JAGC, USN*

———————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————

PER CURIAM:

A military judge sitting alone as a general court-martial convicted Appellant pursuant to his pleas. Appellant pleaded guilty to conspiracy, to wit: sexual assault of a child (three children under the age of 16); knowingly and wrongfully distributing child pornography; and five specifications of sexual assault of a child, in violation of Articles 81, 134 and 120b, Uniform Code of Military Justice, [UCMJ].[2]

In his sole assignment of error Appellant asserts that his sentence is inappropriately severe because it is highly disparate to sentences awarded in two closely related cases and no rational basis exists for the disparity.[3] We find no prejudicial error and affirm.

———————————

[2] 10 U.S.C. §§ 881, 920b, and 934 (2019).

[3] Appellant did not move to attach his co-conspirators' Entries of Judgment but cited them in his brief. This Court considered the Entries of Judgment and plea agreements of Appellant's co-conspirators, documents outside Appellant's record of trial, for our analysis pursuant to *United States v. Jessie,* 79 M.J. 437, 440 (C.A.A.F 2020), where the Court of Appeals for the Armed Forces recognized the appropriateness of considering material from outside the record when "necessary for resolving issues raised by materials in the record." *Jessie*, 79 M.J. at 444. Although not raised by Appellant, LCpl Armao's (a companion case) court-martial results were not listed on Appellant's Statement of Trial Results or Convening Authority's Action as required by § 0150a(3) and § 0153a(5), respectively, of the Dep't of the Navy, Judge Advocate General Instr. 5800.7G, *Manual of the Judge Advocate General*, (CH-1, Feb. 14, 2022). But we find no prejudice. We note that LCpl Fahey's court-martial was referred by a different convening authority so it does not qualify as a companion case.

## I. BACKGROUND

Appellant reported in 2020 to 9th Engineer Support Battalion in Okinawa, Japan. This was his first duty assignment as a Marine. After about a year on the island, he received orders to Ammunition Company, 3d Supply Battalion, located on a northern camp in Okinawa. This is the same unit that Lance Corporal [LCpl] Mason Armao and LCpl Joseph Fahey later joined in mid-2021. The Marines became friends and spent time together at work and on liberty.

During this time, Appellant created two fictitious social media accounts for the purpose of identifying teenagers on Okinawa who wanted to engage in sexual activity and consume alcohol and drugs. In one account, he posed as a female high school student who had recently moved to Okinawa, Japan, and was interested in participating in a "summer challenge," whereby participants would receive "points" and money in exchange for legal and illegal acts, including sexual challenges.[4] In another account he posed as a female middle school student in Okinawa who had a "sugar daddy,"[5] that is a person who pays for sex acts.[6] He alternated between the fictitious accounts to ensnare children, having the children take and send him naked images of themselves. The scheme also served as a means to introduce Appellant (as himself) online and in person to these minors, and to thereby attempt to have sex with them. Appellant used this scheme to communicate with 34 such persons, some of whom he knew were under 18 years of age.[7]

Appellant targeted his first victim in May 2021. Miss Lima was a 13-year-old military dependent and a seventh grade student at Lester Middle School—a Department of Defense Education Activity school on board Camp Lester in Okinawa, Japan.[8] Alternating between his two false social media accounts, Appellant recommended himself to Miss Lima as a suitable "sugar daddy" and used the fictitious personas to give credibility that sex with Appellant was enjoyable and that Appellant would give money to Miss Lima for the sex acts. Using his real identity, Appellant told Miss Lima that he would be her "sugar daddy" and pay for sex. Appellant then sent Miss Lima images of girls posed in sexual positions for her to mimic, asking that she take images of herself and

---

[4] R at 213 - 214.

[5] R at 213 and Pros. Ex. 1.

[6] R at 213.

[7] Pros. Ex. 1 at 2.

[8] The names of the victims in this opinion are pseudonyms.

send to him. Miss Lima did as asked, sending several such images, which Appellant stored on his electronic devices. He later distributed the images to LCpl Armao and LCpl Fahey.

After exchanging the images with Miss Lima and expressing to her his desire to exchange money for sexual intercourse, Appellant rented a room at a hotel located in Chatan, Okinawa, across the street from Lester Middle School. On 21 May 2021, Appellant brought Miss Lima to the hotel after classes ended for the day. In the hotel room, Appellant removed Miss Lima's clothes and penetrated her vulva and vagina with his finger to gratify his sexual desires. Appellant then placed his hand on her throat and pressed her against the wall by applying pressure to her throat. After pinning her to the wall by her throat, Appellant, using his hand on her throat, threw her on the bed and then penetrated her vagina with his penis until he ejaculated. This activity constituted sexual assault of a minor as Appellant pleaded to in Charge I, Specification 2 of the charge sheet. When finished, Appellant paid Miss Lima for the sexual acts. At all times, Appellant believed Miss Lima was 13 years old because she told him as much on 18 May 2021.[9]

After his sexual assault of Miss Lima, Appellant continued to seek other children for sex. Over the next few days, he communicated with three other girls: Miss Pete, Miss Romeo, and Miss Rose—all students at Lester Middle School. As before, Appellant used multiple fictitious social media accounts to set himself up as a potential "sugar daddy." At the time, Miss Pete and Miss Romeo were 13 years of age, and Miss Rose was 14 years of age.

On 25 May 2021, Appellant invited several friends to join in his scheme. While on duty with LCpl Fahey, Appellant stated that he had found girls on Instagram who wanted to participate in a "summer challenge" but that it was difficult doing all of the online communication himself. So, he invited LCpl Fahey, LCpl Armao, and two other Marines into a group chat. Appellant also sought and obtained nude images from Miss Pete, Miss Romeo, and Miss Rose. He shared these pornographic images of the children with the members of the group chat, including LCpl Armao and LCpl Fahey.

Soon, a conspiracy formed amongst Appellant, LCpl Fahey, and LCpl Armao, for the purpose of having sex with the three girls. Appellant described this moment during the plea colloquy portion of his court-martial:

---

[9] R at 138.

> Lance Corporal Fahey says in the Man of Culture group chat --
> He says, "Okay. Are you ready to deal? Are you ready? Are you
> down to rail some hoes? Yes or no? Even if they are 12?"
>
> Which then Lance Corporal Armao replies quoting "Sí, papi,"
> which means yes. He came to agreement after that.[10]

Appellant asked LCpl Armao and LCpl Fahey to send images of themselves and their Snapchat addresses to the three girls, which they did. The girls were then asked who they wanted to be their "sugar daddy." This process paired off each girl with each Marine: Miss Rose with LCpl Fahey, Miss Romeo with LCpl Armao, and Miss Pete with Appellant. The Marines and the girls then began communicating directly.

Working together, the three Marines coordinated to meet up with the three girls. Appellant reserved rooms at the same hotel near Lester Middle School where he had assaulted Miss Lima, and LCpl Fahey coordinated meeting times with the girls. All three Marines separately told the girls with whom they were paired that they wanted to have sex with them.

On 27 May 2021, the three conspirators executed their plan, purchasing condoms, lubricant, and alcohol on their way to the hotel. Later that day, the three Marines and three girls finally met up. After making introductions, they walked first to a convenience store and then to the hotel, where they went straight to LCpl Armao's room. After some time, LCpl Fahey suggested they begin drinking alcohol. He then poured five drinks, which were a mix of rum and pineapple juice. The girls all drank some alcohol, but in different amounts: Miss Pete drank only a small amount, Miss Romeo drank her whole cup, and Miss Rose drank her own cup, the remainder of her friend's cup, and the remaining rum left in the bottle.

At this point Appellant suggested that the group should separate as couples into their individual rooms, and LCpl Armao agreed. Appellant and Miss Pete departed for Appellant's room. There, Appellant placed his hand on Miss Pete's throat and removed her clothing. They started having sex, during which he penetrated her vulva with his fingers and penis. At all times during the sexual assault Appellant knew that Miss Pete was 13 years old.

A short time later, Appellant and Miss Pete returned to LCpl Armao's room, where they met up with the other two girls and two Marines. Since Miss Rose had become very intoxicated from the drinks earlier that evening, LCpl Fahey, LCpl Armao, and Miss Romeo took Miss Rose to a local restaurant to get some food. Appellant took Miss Pete to get ice cream. Soon thereafter, all

---

[10] R at 187.

of the girls left the Marines who later returned to the hotel. Later that evening, while all three were in Appellant's room, a law enforcement official from the Provost Marshal's Office apprehended the three Marines.

On 21 October 2021, LCpl Fahey pleaded guilty at a general court-martial to sexually assaulting Miss Rose, a child under 16 years of age. His plea agreement contained a clause that he would testify against Appellant. His sentence consisted of reduction to E-1, 48 months of confinement, and a dishonorable discharge.

On 13 January 2022, LCpl Armao pleaded guilty at a general court-martial to sexually assaulting Miss Romeo, a child under 16 years of age. His plea agreement contained a clause that he would testify against Appellant. His sentence consisted of reduction to E-1, 4 years of confinement, and a dishonorable discharge.

## II. DISCUSSION

**Appellant's Sentence was Appropriate and Not Highly Disparate**

In his sole assignment of error, Appellant alleges that his sentence is disproportionately severe compared to the sentences of his fellow co-conspirators.[11] He avers that reassessing a sentence of confinement in the range of eight to ten years will remedy this error.

We review sentence appropriateness de novo[12] and generally without reference or comparison to sentences in other cases.[13] We will engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."[14]

When arguing for relief based on sentence disparity, an appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden . . . then the Government must show that there is a rational basis for the

---

[11] Neither LCpl Armao nor LCpl Fahey pleaded guilty to any charges alleging conspiracy or distribution of child pornography.

[12] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[13] *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).

[14] *United States v. Sothen,* 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *Ballard,* 20 M.J. at 283).

disparity."[15] "Closely related" cases involve "offenses that are similar in both nature and seriousness or which arise from a common scheme or design."[16]

In assessing whether sentences are highly disparate, "adjudged sentences are used because there are several intervening and independent factors between trial and appeal—including discretionary grants of clemency and limits from pretrial agreements—that might properly create the disparity in what are otherwise closely related cases."[17] Moreover, we are "not limited to a narrow comparison of the relative numerical values of the sentences at issue," but may also consider "the disparity in relation to the potential maximum punishment."[18]

Finally, co-conspirators are not entitled to similar sentences, and disparity between them does not necessarily render one sentence inappropriate, "provided each military accused is sentenced as an individual."[19] This is so because the point of examining disparate sentences is not only to eliminate actual unfairness or injustice, but also to ensure the "appearance of fairness and integrity, without which the public, members of Congress, and service personnel will lose confidence in the military justice system."[20]

We begin by finding that, while he engaged in criminal activity in conjunction with LCpl Armao and LCpl Fahey, Appellant's case is not closely related to theirs as he committed additional misconduct. Not only did Appellant sexually assault Miss Lima a few days before engaging in his scheme with LCpl Armao and LCpl Fahey, but he also distributed child pornography (digital images of Miss Romeo, Miss Rose, and Miss Pete engaging in sexually explicit conduct), and was the mastermind and primary agent of the conspiracy, a charge to which he alone pleaded guilty.[21] The additional serious misconduct to which Appellant pleaded guilty clearly distinguishes his case from those of his co-actors.

---

[15] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F 1999).

[16] *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994); *see also Lacy*, 50 M.J. at 288 (examples of closely related cases include co-actors in a common crime, service members involved in a common or parallel scheme, or "some other direct nexus between the service members whose sentences are sought to be compared").

[17] *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010).

[18] *Lacy*, 50 M.J. at 289.

[19] *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001).

[20] *Kelly*, 40 M.J. at 570.

[21] Additional Charge II.

Nonetheless, even had Appellant met his burden of showing that the cases were "closely related" and that the sentences were "highly disparate," we nonetheless find rational bases for disparities among the sentences. Appellant's additional misconduct—and the severity and frequency of his scheming and predatory behavior—clearly justifies disparate treatment. Additionally, and notably, both LCpl Fahey and LCpl Armao struck plea agreements with the Government to testify against Appellant, indicating mitigating characteristics of acceptance of responsibility less present in Appellant's case. Also, Appellant's additional misconduct meant that he faced a maximum confinement period of 200 years, while his co-conspirators faced 60 years (LCpl Armao) and 90 years (LCpl Fahey). While the two other Marines' sentences vary substantially from Appellant's sentence, his additional misconduct fully accounts for the difference in punishment.

Finally, "Appellant's punishment was the predictable result of a [plea agreement] that he negotiated and voluntarily entered into with the convening authority."[22] Appellant voluntarily chose to plead guilty in accordance with the specific terms of an agreement he freely negotiated. As we have previously stated, "we generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial agreement."[23] Therefore, we find the Appellant's claim to be without merit.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[20]

The findings and sentence are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[22] *United States v. Bocage*, No. 202000206, 2022 CCA LEXIS 311, *7 (N-M Ct. Crim. App. May 25, 2022).

[23] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, *7 (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished).