*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, ATTANASIO, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Caleb J. TAPER**
Seaman Recruit (E-1), U.S. Navy
*Appellant*

**No. 202400014**

_____

Decided: 25 February 2025

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
John J. Stephens (Arraignment)
Andrew Braden (Trial)

Sentence adjudged 15 September 2023 by a general court-martial convened at Naval Station Great Lakes, Illinois, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for

twenty-eight months,[1] forfeiture of all pay and allowances,[2] and a dishonorable discharge.

For Appellant:
*Lieutenant Raymond E. Bilter, JAGC, USN*

For Appellee:
*Lieutenant Erin H. Bourneuf, JAGC, USN*
*Lieutenant Lan T. Nguyen, JAGC, USN*

Judge ATTANASIO delivered the opinion of the Court, in which Senior Judge KISOR and Judge HARRELL joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

ATTANASIO, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of one specification of accessory after the fact to wrongful distribution of a controlled substance, three specifications of breaching restriction; two specifications of violating a lawful general order; one specification of wrongful distribution of a controlled substance; two specifications of wrongful introduction of a controlled substance; six specifications of wrongful use of a controlled substance; and one specification of larceny, in violation of Articles 78, 87b, 92, 112a, and 121, Uniform Code of Military Justice (UCMJ).[3]

Appellant raises two assignments of error (AOE), which we rephrase as follows: (1) Appellant's sentence is inappropriately severe due to an inappropriate disparity between the disposition of his case and that of a co-actor in a

---

[1] The adjudged sentence included thirty-seven months of confinement but the convening authority reduced the confinement period by nine months—to twenty-eight months—owing to Appellant's substantial assistance in the prosecution of two courts-martial. Appellant received 167 days of confinement credit.

[2] The adjudged sentence included forfeiture of all pay and allowances, but the Entry of Judgment (EOJ) failed to reflect this component of the sentence. As explained below, we correct this and other EOJ errors, and order a modified EOJ.

[3] 10 U.S.C. §§ 878, 887b, 892, 912a, 921.

closely related case; and (2) the Entry of Judgment (EOJ) incorrectly reflects the court-martial's findings and sentence. We find no prejudicial error and affirm the findings and sentence. However, we find that the EOJ contains multiple errors and order a modified EOJ.

## I. BACKGROUND

During an eighteen-month period—October 2021 to April 2023—Appellant engaged in a series of drug related and other criminal acts, totaling 16 separate offenses. These included distributing lysergic acid diethylamide (LSD), twice introducing cocaine onto Naval Station Great Lakes, and using various controlled substances—including LSD, cocaine, and delta-9 tetrahydrocannabinol—on six occasions. Appellant also twice violated a lawful general order by using delta-8 tetrahydrocannabinol and broke the limits of his restriction at least four times.[4] Finally, he stole $159.97 worth of merchandise from the Navy Exchange.

The central issue in this case revolves around the tragic death of Seaman Apprentice (SA) Alpha,[5] who died from a fentanyl overdose on 6 November 2021, in the barracks room of Seaman (SN) Lima and Petty Officer Third Class (PO3) Allen on board Naval Station Great Lakes.

The events leading to SA Alpha's death began the previous day, when SN Lima and PO3 Allen left the base to procure fentanyl-laced Percocet pills[6] and cocaine from a civilian drug dealer named "Elmo." The fentanyl pills that SA Alpha later ingested, resulting in his death, were obtained during this transaction. Upon returning to their barracks room with the drugs, the two Sailors

---

[4] Appellant was convicted of three specifications of breaching restriction. However, one of these convictions—the Specification of Additional Charge VI—was charged as having occurred on divers occasions. The term "divers occasions" means "two or more occasions." *United States v. Leslie,* 2018 CCA LEXIS 382, at *2 (N-M. Ct. Crim. App. August 13, 2018) (citation omitted) (unpublished).

[5] All names in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms.

[6] For the remainder of this opinion, we refer to the fentanyl-laced Percocet pills simply as fentanyl.

were joined by Appellant around 2100. About 30 minutes later, the group began using drugs—SN Lima and PO3 Allen consumed fentanyl, while Appellant used LSD.[7] They also drank alcohol during this time.

At approximately 2345, SA Alpha arrived at the barracks room. SN Lima gave him two fentanyl pills, which SA Alpha ingested by crushing and snorting. SN Lima did the same. Both sailors became severely intoxicated; during his NCIS interview, Appellant described SA Alpha as having appeared like a "zombie."

At some point, SA Alpha collapsed. Appellant and the others moved him to SN Lima's bed. Shortly afterward, Appellant left the room and returned to his own quarters.

At approximately 0700 the next morning, 6 November 2021, SN Lima called Appellant and asked him to come to the barracks room he shared with PO3 Allen. When Appellant arrived, SN Lima and PO3 Allen informed him that SA Alpha was dead. SA Alpha's body remained in SN Lima's bed, with his eyes closed and foam visible around his mouth.

Seaman Lima said to Appellant, "You need to help me out," and asked him to assist in moving SA Alpha's body. PO3 Allen was present during this entire interaction.[8]

The three ultimately decided to move SA Alpha's body back to his own room. Petty Officer Allen refused to touch the body, instead serving as a lookout and holding the door. Using a bed sheet, SN Lima and Appellant carried SA Alpha's body, lifting him by the armpits and legs. Petty Officer Allen ensured the hallway was clear before they moved the body. Once they reached SA Alpha's room, PO3 Allen held the door as SN Lima and Appellant brought the body inside.

Inside the room, SN Lima and Appellant carried the body to the bathroom while PO3 Allen kept watch. They attempted to position the body on the toilet but were unsuccessful, ultimately laying it on the ground with SA Alpha's legs draped over the bathtub to fit him in the space.

---

[7] Appellant obtained the LSD from another Sailor, Seaman (SN) Papa, who had briefly stopped by the room earlier that evening to give Appellant the LSD. At that time, Appellant gave SN Papa the cocaine that SN Lima and PO3 Allen had obtained from Elmo. SN Papa then left and had no further involvement in the incident.

[8] Pros. Ex. 1 at 4.

Appellant's purpose in moving SA Alpha's body was to conceal the true circumstances of his death and create the appearance of an accidental fentanyl overdose in SA Alpha's own room. Appellant understood that SN Lima faced serious consequences for distributing fentanyl to SA Alpha. When SN Lima pleaded, "You need to help me out," Appellant interpreted this as a request to help cover up the incident and shield SN Lima from accountability for distributing the fentanyl.[9]

Appellant faced multiple charges related to SA Alpha's death, including accessory after the fact to the wrongful distribution of fentanyl for assisting SN Lima in moving SA Alpha's body, conspiracy to obstruct justice, obstruction of justice, false official statement, involuntary manslaughter, and negligent homicide. He was also charged with more than twenty additional offenses unrelated to SA Alpha's death.

Pursuant to a plea agreement with the convening authority, Appellant agreed to plead guilty to the accessory after the fact charge. Appellant also agreed to plead guilty to fifteen offenses unrelated to SA Alpha's death. Consistent with the agreement, Appellant pleaded not guilty to the remaining charges and specifications. The military judge accepted Appellant's pleas, entered findings consistent with them,[10] and sentenced Appellant to a dishonorable discharge, forfeiture of all pay and allowances, and confinement for a total of thirty-seven months. This sentence included a nineteen month segmented confinement term for accessory after the fact, to be served consecutively with the confinement terms adjudged for all other convictions.

In accordance with the plea agreement, the convening authority reduced Appellant's "aggregate total" confinement period by nine months, resulting in a final confinement period of twenty-eight months.[11] This reduction acknowledged Appellant's substantial assistance in the prosecution of two courts-martial.

Petty Officer Allen originally faced general court-martial charges for offenses related and unrelated to SA Alpha's fatal overdose. Prior to trial, the convening authority dismissed without prejudice the charges related to SA Alpha's death. The trial proceeded with the unrelated charges and resulted in a full acquittal before enlisted members. Subsequently, the convening authority

---

[9] Pros. Ex. 1 at 4.

[10] In accordance with the plea agreement, the charges and specifications to which Appellant pleaded not guilty were withdrawn and dismissed.

[11] App. Ex. 1 at para. K; Convening Authority's Action at 2; Entry of Judgment at 2.

referred the charges related to SA Alpha's death to a second general court-martial. However, before trial, the Navy approved PO3 Allen's request for separation in lieu of trial and administratively discharged him with an Other than Honorable characterization of service.

Additional facts necessary to resolving the AOE are provided below.

## II. DISCUSSION

**A. Appellant's sentence was not inappropriately severe.**

Appellant contends that his sentence is inappropriately severe, asserting that his case is closely related to PO3 Allen's but that the dispositions of their cases are unjustifiably disparate. We disagree.

*1. Standard of Review and Law*

We review sentence appropriateness de novo.[12] This Court may only affirm "the sentence or such part or amount of the sentence as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[13] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[14] Our review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[15] In making this assessment, we analyze the record as a whole.[16]

This Court's "power to review a case for sentence appropriateness . . . includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions."[17] We have "discretion to consider and compare" other "sentences when . . . reviewing a case for sentence appropriateness and relative

---

[12] *United States v. Lane,* 64 M.J. 1, 2 (C.A.A.F. 2006).

[13] Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

[14] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[15] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[16] *Healy*, 26 M.J. at 395–97.

[17] *United States v. Swisher*, 85 M.J. 1, 4 (C.A.A.F. 2024) (quoting *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)).

uniformity."[18] We are not required "to engage in sentence comparison with specific cases except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases."[19]

We use the following analytical approach to analyze a claim that the sentences in two cases are disparate:

> An appellant bears the burden of demonstrating that any cited cases are "closely related" to his or her case and that the sentences are "highly disparate." If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity.[20]

"Closely related" cases involve "offenses that are similar in both nature and seriousness or which arise from a common scheme or design."[21] In assessing whether sentences are highly disparate, we are "not limited to a narrow comparison of the relative numerical values of the sentences at issue," but may also consider "the disparity in relation to the potential maximum punishment."[22]

Finally, co-actors are not entitled to similar sentences and disparity between them does not necessarily render one sentence inappropriate, "provided each military accused is sentenced as an individual."[23] This is so because the point of examining disparate sentences is not only to eliminate actual unfairness or injustice, but also to ensure the "appearance of fairness and integrity,

---

[18] *Id.* (quoting *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001)).

[19] *United States v. Noble*, 50 M.J. 293, 294 (C.A.A.F. 1999) (quoting *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (internal quotation marks and additional citation omitted)). *See also Swisher*, 85 M.J. at 4 (citing *United States v. Behunin*, 83 M.J. 158, 161–162 (C.A.A.F. 2023).

[20] *Swisher*, 85 M.J. at 6–7 (quoting *Lacy*, 50 M.J. at 288).

[21] *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994); *see also Lacy*, 50 M.J. at 288 (examples of closely related cases include co-actors in a common crime, service members involved in a common or parallel scheme, or "some other direct nexus between the service members whose sentences are sought to be compared").

[22] *Lacy*, 50 M.J. at 289.

[23] *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (citations omitted).

without which the public, members of Congress, and service personnel will lose confidence in the military justice system."[24]

*2. Analysis*

We begin with the obvious. This is not one of those "rare instances" where we are required to compare "disparate sentences adjudged in closely related cases."[25] There is no sentence to compare—PO3 Allen was never convicted of a crime and thus was never sentenced. Instead, the Navy approved PO3 Allen's request for separation in lieu of trial and administratively discharged him. Accordingly, the real issue in this case concerns initial disposition rather than sentence uniformity or disparity.

"[A]n appellant may bring to our attention other cases with differing disposition decisions," in light of our "broad power . . . under Article 66(c), UCMJ, to affirm only a sentence that we determine on the basis of the entire record should be approved."[26] However, "absent evidence of discriminatory or otherwise illegal prosecution or referral, we have broad discretion in deciding whether or not to remedy this disparity."[27]

In reviewing the dispositions at issue, we note that Appellant and PO3 Allen were co-actors involved in "offenses that are similar in both nature and seriousness and which arise from a common scheme or design."[28] Both used illegal drugs in the same room, at the same time, with the same individuals. Both also assisted SN Lima in unlawfully moving SA Alpha's body, acting with the intent to prevent authorities from uncovering the true circumstances of SA Alpha's fatal drug overdose and to conceal the drug-related criminality that caused his death.

Appellant was convicted of multiple crimes at a general court-martial and sentenced to thirty-seven months of confinement, subsequently reduced to twenty-eight months by the convening authority, forfeiture of all pay and allowances, and a dishonorable discharge. Specifically, for his action in common with PO3 Allen—wrongfully moving SA Alpha's dead body—Appellant was

---

[24] *Kelly,* 40 M.J. at 570.

[25] *Lacy,* 50 M.J. at 288.

[26] *United States v. Stotler,* 55 M.J. 610, 612 (N-M. Ct. Crim. App. 2001) (quoting *United States v. Noble,* 50 M.J. 293, 295 (C.A.A.F. 1999)).

[27] *Id.* (citing *Noble,* 50 M.J. at 295).

[28] *See supra* note 22 and accompanying text.

sentenced to a consecutive term of nineteen months of confinement. In contrast, PO3 Allen was administratively separated from the Navy without any criminal conviction.

We acknowledge that this presents a disparity of outcomes. "Nonetheless, absent evidence of discriminatory or otherwise illegal prosecution or referral," we retain broad discretion in deciding whether to remedy this disparity.[29] For the reasons outlined below, we decline to do so.

*First*, Appellant has not claimed discriminatory or otherwise illegal prosecution or referral, and we find no grounds for any such claim.

*Second*, we reject Appellant's narrow focus on the events surrounding SA Alpha's death. Examining the record as a whole, we find reasonable justification for the convening authority's disposition decisions. True, were this case solely about one event, we might sympathize with Appellant's effort to cast this case as a stark injustice—where one man is branded a criminal and sentenced to nineteen months of confinement, while another avoids all criminal liability. However, this case encompasses far more than a single incident.

Appellant's myopic emphasis on a single charge—accessory after the fact—and a particular incident—moving the body—fails to account for the convening authority's broader responsibilities in disposition decisions. The convening authority is not tasked solely with disposing of an individual charge in isolation. Instead, he must assess all charges and specifications against an accused. This evaluation involves weighing numerous factors, particularly pertinent here, the nature, seriousness, and circumstances of all the offenses at issue.

Appellant was initially charged with more than thirty crimes including involuntary manslaughter, negligent homicide, accessory after the fact to drug distribution, conspiracy to obstruct justice, conspiracy to introduce and distribute drugs, obstruction of justice, false official statement, fleeing apprehension, breach of restriction, failure to obey a lawful general order, drug distribution, drug introduction, drug use, and larceny.[30] More than twenty of these alleged offenses involved misconduct unrelated to SA Alpha's death. These included conspiring with other Sailors to introduce and distribute drugs; multiple instances of drug use, introduction, and distribution; three separate violations of

---

[29] *Stotler*, 55 M.J. at 612 (citing *Noble*, 50 M.J. at 295).

[30] *See Noble*, 50 M.J. at 295 (finding it appropriate for a Court of Criminal Appeals to cite charges of which an appellant was acquitted for purposes of examining a convening authority's decision to refer an appellant's case to a court-martial while administratively disposing of a closely related case).

lawful general orders; multiple breaches of restriction; fleeing apprehension; and larceny from the Navy Exchange.

Appellant ultimately pleaded guilty to sixteen offenses, including accessory after the fact to drug distribution for helping SN Lima move SA Alpha's body, breach of restriction, failure to obey a lawful general order, drug distribution, drug introduction, drug use, and larceny. Fifteen of these offenses were unrelated to the events surrounding SA Alpha's death, and fourteen were committed after Appellant moved SA Alpha's body. In other words, Appellant committed a series of criminal acts distinct from his involvement in SA Alpha's death. Worse still, SA Alpha's death did not serve as a turning point to deter Appellant from further criminal activity; on the contrary, he simply continued offending—again and again.

In contrast, PO3 Allen was charged with comparatively few offenses—"only" seven in total, three of which related to the circumstances surrounding SA Alpha's death: conspiracy to introduce fentanyl, obstruction of justice for moving SA Alpha's body, and obstruction of justice for providing false information to NCIS about SA Alpha's death. The remaining four offenses involved drug use and violations of general orders.

The differences in the nature, seriousness, and circumstances of Appellant's case compared to PO3 Allen's provided the convening authority with reasonable grounds to dispose of the cases differently. We recognize the possibility that the Government could have charged PO3 Allen with additional offenses related to SA Alpha's death, such as involuntary manslaughter or negligent homicide—charges which were preferred against Appellant. However, this does not negate the fact that the Appellant was accused of more than twenty unrelated offenses, compared to only four in PO3 Allen's case.[31]

*Third*, "the charges here are serious enough for us to conclude that the sentence is not inappropriately severe and should be affirmed."[32] Appellant's misconduct, even when limited to the events surrounding SA Alpha's death, was egregious. He took an active role in what can only be characterized as a barracks room drug party, during which his shipmate fatally overdosed.

Later, working with his shipmates, Appellant manhandled SA Alpha's lifeless body through the passageway, into his room, and finally into the bathroom.

---

[31] We also note that the record before us does not appear to suggest a predisposition toward improper leniency or a general reluctance to prosecute PO3 Allen. As noted above, the Government prosecuted PO3 Allen at a general court-martial, albeit ultimately on charges unrelated to SA Alpha's death.

[32] *Stotler*, 55 M.J. at 612.

Initially, they considered propping him on the toilet but ultimately dumped him on the floor, foam still pooling at his mouth and his legs awkwardly splayed over the bathtub in a crude attempt to fit his body into the confined space. Adding to the indignity, SA Alpha's pants may have begun to slip off at some point as they gripped his feet during the ordeal.

This was the condition in which SA Alpha's body was discarded, only to be discovered later by his unsuspecting roommates. The objective of this act was to conceal the illegal drug activity that led to one shipmate's death and to protect another from accountability.

Although Appellant and PO3 Allen both participated in these events, it is well settled that "leniency towards one accused does not necessarily flow to another, nor should it," and "[d]isparity that results from a convening authority's . . . judgment does not necessarily entitle a service person to some form of appellate relief."[33]

*Fourth*, we find no basis to conclude that the Government's decision to prosecute Appellant, or its decision to forego prosecuting PO3 Allen in favor of administrative separation, was influenced by "factors seriously detracting from the appearance of fairness and integrity in military justice proceedings."[34] Nor do we find that any disparity that exists here is "so great as to exceed relative uniformity," or that it "rises to the level of an obvious miscarriage of justice or abuse of discretion."[35]

In sum, we find that the disposition of Appellant's case, as compared to PO3 Allen's, does not warrant relief. Moreover, we conclude that the sentence is appropriate on its own merits—after thoroughly reviewing the record, we find that the sentence is appropriate for this offender and his offenses.[36]

---

[33] *Id.* (quoting *Kelly*, 40 M.J. at 570). *See also United States v. Blair*, 72 M.J. 720, 725–36 (A. Ct. Crim. Ap. 2013) *review denied* 73 M.J. 209 (C.A.A.F. 2014); *see also Durant*, 55 M.J. at 261 (citations omitted) (declaring "the military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual.").

[34] *Stotler*, 55 M.J. at 612–613 (quoting *Kelly*, 40 M.J. at 570) (internal quotations marks omitted).

[35] *Id.* at 612 (quoting *United States v. Swan*, 43 M.J. 788, 792 (N-M. Ct. Crim. App 1995)).

[36] *Snelling*, 14 M.J. at 268. As part of our review of the entire record, we specifically considered that Appellant provided substantial assistance in the prosecution of two

In reaching this conclusion, we specifically evaluated the appropriateness of each segmented term of confinement for each specification as well as the appropriateness of the sentence as a whole.[37]

## B. The Entry of Judgment is Defective.

Appellant asserts that the EOJ incorrectly lists the pleas and findings or other dispositions to certain charges and specifications.[38] We agree.

An appellant is entitled to have a record of trial that is accurate and complete.[39] Whether a record of trial is accurate and complete is a question we review de novo.[40]

Rule for Courts-Martial 1111(b) requires the EOJ to include, for each charge referred to court-martial, a summary of each charge and specification, the plea of the accused, and the disposition of each charge, as well as the sentence awarded.[41]

In this case, Appellant is correct that the EOJ incorrectly lists the pleas and findings or other dispositions to several charges and specifications. Additionally, although neither party raised this issue, we note that the EOJ fails to reflect that the sentence included forfeiture of all pay and allowances.

Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[42] In accordance with R.C.M. 1111(c)(2), we modify the EOJ and direct that it be included in the record.

---

courts-martial. We also note that, in exchange for this cooperation, the convening authority reduced Appellant's total confinement period by nine months—the amount he had bargained for in the plea agreement.

[37] *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

[38] R.C.M. 1111(b); *see also United States v. Wadaa*, 84 M.J. 652, 653 (N-M. Ct. Crim. App. 2024).

[39] *Wadaa*, 84 M.J. at 653 (citing *United States v. Crumpley*, 49 M.J. 538 (N-M. Ct. Crim. App. 1998)).

[40] *Id*. at 654 (citation omitted).

[41] *Id.* at 655 (setting forth minimal requirements for EOJs to properly set forth a summary of the charges and specifications); *United States v. Booker*, 83 M.J. 595, 598 (N-M. Ct. Crim. App. 2023).

[42] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

## III. CONCLUSION

After careful consideration of the record and submissions of appellate counsel, we have determined that the findings and sentence as reflected in the modified EOJ are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[43]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[43] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202400014 |
| v. | **ENTRY OF JUDGMENT** |
| **Caleb J. TAPER** Seaman Recruit (E-1) U.S. Navy | |
| *Accused* | *As Modified on Appeal* |
| | **25 February 2025** |

On 15 September 2023, the Accused was tried at Naval Station Great Lakes, Illinois, by a general court-martial, consisting of a military judge sitting alone. Military Judge Andrew Braden presided.

## FINDINGS

The following are Seaman Taper's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 78, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 878.**

*Plea:* Guilty.
*Finding:* Guilty

**Specification:** **Accessory after the fact to wrongful distribution of fentanyl, a Schedule II controlled substance, on or about 6 November 2021.**

*Plea:* Guilty.
*Finding:* Guilty.

**Charge II:** **Violation of Article 81, UCMJ, 10 U.S.C. § 881.**

*Plea:* Not Guilty.
*Finding:* Withdrawn and dismissed.

**Specification 1:** **Conspiracy to obstruct justice on or about 6 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 2:** **Conspiracy to wrongfully introduce a controlled substance, onto Naval Station Great Lakes, on or about 12 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 3:** **Conspiracy to wrongfully distribute cocaine on or about December 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Charge III:** **Violation of Article 87b, UCMJ, 10 U.S.C. § 887b.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 1:** **Breach of restriction on or about 22 July 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 2:** **Breach of restriction on or about 29 July 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Charge IV:** **Violation of Article 92, UCMJ, 10 U.S.C. § 892.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 1:** **Violation of a lawful general order, to wit: chapter 4, paragraph 1(d)(4), OPNAVINST 5350.4E, dated 28 March 2022, by wrongfully using detla-8 tetrahydrocannabinol on or about 18 July 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 2:** **Violation of a lawful general order, to wit: chapter 4, paragraph 1(d)(4), OPNAVINST 5350.4E, dated 28 March 2022, by wrongfully using detla-8 tetrahydrocannabinol on or about 20 July 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Charge V:**     **Violation of Article 112a, UCMJ, 10 U.S.C. § 912a.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Specification 1:**    **Wrongful use of fentanyl, a Schedule II controlled substance, on or about 5 November 2021.**

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed.

**Specification 2:**    **Wrongful introduction of fentanyl, a Schedule II controlled substance, on or about 5 November 2021.**

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed.

**Specification 3:**    **Wrongful distribution of fentanyl, a Schedule II controlled substance, on or about 5 November 2021.**

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed.

**Specification 4:**    **Wrongful distribution of a controlled substance, lysergic acid diethylamide (LSD), on or about 12 November 2021.**

> *Plea:* Guilty.
>
> *Finding:* Guilty.

**Specification 5:**    **Wrongful introduction of a Schedule I, II, III, IV, or V controlled substance onto Naval Station Great Lakes on or about 12 November 2021.**

> *Plea:* Guilty, except for the words "a Schedule I, II, III, IV, or V controlled substance," substituting in place "cocaine." Of the excepted words, Not Guilty. Of the substituted words, Guilty.
>
> *Finding:* Guilty except for the words "a schedule I, II, III, IV, or V controlled substance," substituting in place, "cocaine;" of the excepted words, Not Guilty; of the substituted words, Guilty.

**Specification 6:**    **Wrongful use of a controlled substance, cocaine, on or about 26 November 2021.**

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed.

**Specification 7:**    **Wrongful distribution of a controlled substance, cocaine, on or about December 2021.**

> *Plea:* Not Guilty.

3

*Finding:* Withdrawn and dismissed.

**Specification 8:** **Wrongful introduction of a controlled substance, cocaine, onto Naval Station Great Lakes on or about December 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 9:** **Wrongful use of fentanyl, a Schedule II controlled substance, on or about 3 January 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 10:** **Wrongful use of a controlled substance, LSD, on or about 3 January 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 11:** **Wrongful use of a controlled substance, detla-9 tetrahydrocannabinol, on or about 3 January 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 12:** **Wrongful use of oxazepam, a Schedule IV controlled substance, on or about 3 January 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 13:** **Wrongful use of a controlled substance, detla-9 tetrahydrocannabinol, on or about 24 January 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 14:** **Wrongful use of a controlled substance, cocaine, on or about 2 March 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 15:** **Wrongful use of a controlled substance, detla-9 tetrahydrocannabinol, on or about 2 March 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification 16: Wrongful use of a controlled substance, detla-9 tetrahydrocannabinol (THC-9), on or about 20 July 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Charge VI:   Violation of Article 119, UCMJ, 10 U.S.C. § 919.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 1:   Involuntary manslaughter by culpable negligence, on or about 6 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 2:   Involuntary manslaughter by culpable negligence, on or about 6 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Charge VII:   Violation of Article 131b, UCMJ, 10 U.S.C. § 931b.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification:   Obstruction of Justice on or about 6 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Charge VIII:  Violation of Article 134, UCMJ, 10 U.S.C. § 934.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 1:   Negligent Homicide on or about 6 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 2:   Negligent Homicide on or about 6 November 2021.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Additional Charge I:  Violation of Article 121, UCMJ, 10 U.S.C. § 921.**

*Plea:* Guilty.

5

*Finding:* Guilty.

Specification:     **Larceny of merchandise of a value of $159.97 from the Navy Exchange Service Command on or about 8 February 2023.**

*Plea:* Guilty.

*Finding:* Guilty.


**Additional Charge II:  Violation of Article 87a, UCMJ, 10 U.S.C. § 887a.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

Specification:     **Flee apprehension from a military police officer on or about 8 February 2023.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.


**Additional Charge III:  Violation of Article 92, UCMJ, 10 U.S.C. § 892.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

Specification:     **Violation of a lawful general order, to wit: chapter 4, paragraph 1(d)(4), OPNAVINST 5350.4E, dated 28 March 2022, by wrongfully using detla-8 tetrahydrocannabinol, on or about 28 July 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.


**Additional Charge IV:  Violation of Article 107, UCMJ, 10 U.S.C. § 907.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

Specification:     **Make a false official statement to a Special Agent on or about 17 February 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.


**Additional Charge V:  Violation of Article 112a, UCMJ, 10 U.S.C. § 912a.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification:** **Wrongfully introduce a controlled substance, cocaine, onto Naval Station Great Lakes on or about 15 October 2021.**

*Plea:* Guilty.
*Finding:* Guilty.

**Additional Charge VI: Violation of Article 87b, UCMJ, 10 U.S.C. § 887b.**

*Plea:* Guilty.
*Finding:* Guilty.

**Specification:** **Breach of restriction on divers occasions from on or about 15 February 2023 to on or about 28 April 2023.**

*Plea:* Guilty.
*Finding:* Guilty.

## SENTENCE

On 15 September 2023, a military judge sentenced Seaman Taper to the following:

**Confinement for a total of 28 months.[1]**

*Sole Specification of Charge I: confinement for nineteen months.*

*Specification 1 of Charge III: no confinement.*

*Specification 2 of Charge III: no confinement.*

*Specification 1 of Charge IV: one month of confinement.*

*Specification 2 of Charge IV: no confinement.*

*Specification 4 of Charge V: confinement for five months.*

*Specification 5 of Charge V: confinement for five months.*

*Specification 10 of Charge V: confinement for one month.*

*Specification 11 of Charge V: confinement for one month.*

*Specification 13 of Charge V: no confinement.*

*Specification 14 of Charge V: confinement for one month.*

*Specification 15 of Charge V: no confinement.*

*Specification 16 of Charge V: confinement for one month.*

---

[1] The military judge sentenced Seaman Taper to 37 months of confinement but the convening authority reduced the sentence by nine months—to 28 months— owing to his substantial assistance in the prosecution of two courts-martial.

7

*Sole Specification of Additional Charge I: no confinement.*

*Sole Specification of Additional Charge V: confinement for three months.*

*Sole Specification of Additional Charge VI: no confinement.*

*All terms of confinement will run consecutively.*

*Seaman Recruit Taper received 167 days of pretrial confinement credit.*

**Forfeiture of all pay and allowances.**

**Dishonorable Discharge.**



FOR THE COURT:

MARK K. JAMISON
Clerk of Court