*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HARRELL, ATTANASIO, and KORN
Appellate Military Judges

———————————

**UNITED STATES**
*Appellee*

**v.**

**Lauren C. PERRY**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202400482**

———————————

Decided: 24 April 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
David C. Segraves

Sentence adjudged 29 August 2024 by a special court-martial tried at Marine Corps Air Station Miramar, San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for two months,[1] reduction to E-1, and a bad-conduct discharge.

For Appellant:
*Lieutenant Commander James P. Andrews, JAGC, USN*

---

[1] Appellant was credited with having served 8 days of pretrial confinement.

For Appellee:
*Commander Jeremy R. Brooks, JAGC, USN*
*Captain Jacob R. Carmin, USMC*

Judge ATTANASIO delivered the opinion of the Court, in which
Senior Judge HARRELL and Judge KORN joined.

———————————————

**This opinion does not serve as binding precedent but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

ATTANASIO, Judge:

A military judge sitting as a special court-martial convicted Appellant, consistent with her pleas, of one specification of wrongful possession of a controlled substance with intent to distribute and one specification of wrongful use of a controlled substance, in violation of Article 112a, Uniform Code of Military Justice (UCMJ).[2]

Appellant raises two assignments of error (AOE), which we reorder and rephrase as follows: (1) Appellant's sentence to a bad-conduct discharge is inappropriately severe; and (2) Appellant's sentence is inappropriately disparate with the sentences adjudged in the cases of her co-actors—Lance Corporal (LCpl) Uniform[3] and Private First Class (PFC) Foxtrot—in closely related cases. We find no prejudicial error and affirm the findings and sentence. However, although not raised by either party, we find that the Entry of Judgment (EOJ) is deficient and order a modified EOJ.

## I. BACKGROUND

*1. The Charges against Appellant*

In July 2024, the convening authority referred various charges and specifications against Appellant to a special court-martial. The specifications alleged that, between 1 December 2023 and 29 February 2024, Appellant committed

———

[2] 10 U.S.C. § 912a.

[3] All names in this opinion, other than those of Appellant, the judges, and appellate counsel, are pseudonyms.

15 drug related offenses including: use, distribution, and possession with intent to distribute controlled substances; conspiracies with LCpl Uniform to possess and distribute controlled substances; and solicitations of LCpl Uniform and four other Marines to use a controlled substance. A final specification alleged, that between 21 February 2024 and 7 May 2024, Appellant violated a lawful order that prohibited contact with PFC Foxtrot and another Marine.

### 2. The Plea Agreement

Appellant entered into a plea agreement with the convening authority. Appellant agreed to plead guilty to one specification of wrongful possession with intent to distribute psilocybin mushrooms and one specification of wrongful use of psilocybin mushrooms and to plead not guilty to all remaining charges and specifications. The convening authority agreed to withdraw and dismiss all charges and specifications to which Appellant agreed to plead not guilty. The plea agreement required the military judge to impose a non-discretionary sentence of reduction to E-1, confinement for two months, and a bad-conduct discharge.[4]

At trial, the military judge conducted an appropriate providence inquiry and a thorough colloquy regarding the plea agreement. The military judge verified that Appellant understood the plea agreement and its sentencing limitations, including that the agreement required the imposition of a bad-conduct discharge, that Appellant expressly consented to the imposition of a bad-conduct discharge as part of the agreement, and that Appellant understood the effects and ramifications of such a discharge. The military judge further verified that Appellant entered into the plea agreement of her own free will and fully understood its terms. Finally, the military judge confirmed that Appellant had sufficient time to consult with her two detailed defense counsel regarding both the plea agreement and her case generally, and that she was fully satisfied with their advice.

The military judge ascertained that Appellant's counsel intended to argue for suspension of the bad-conduct discharge. The military judge then verified that Appellant understood that such an argument was not binding on either the military judge or the convening authority.

### 3. The pleas, providence inquiry, and findings

Appellant entered pleas consistent with the plea agreement—guilty to wrongful use of psilocybin mushrooms and wrongful possession with intent to distribute psilocybin mushrooms, and not guilty to all remaining charges and

---

[4] Imposition of any other punishment was prohibited.

specifications. The providence inquiry established an adequate factual basis for the pleas.

Appellant, in conjunction with another Marine, purchased approximately 15 to 20 psilocybin mushrooms from a civilian drug dealer in San Diego. After completing the purchase, Appellant returned to the base and brought the mushrooms into the barracks. Appellant intended to distribute the mushrooms to a group of Marines. This conduct formed the basis of her conviction for wrongful possession with intent to distribute.

Appellant also personally used the mushrooms by consuming a total of four—two on the day of purchase shortly after returning to the barracks, and two more on a subsequent occasion. This conduct formed the basis of her conviction for wrongful use.

The military judge accepted Appellant's guilty pleas and entered findings consistent with them.[5]

### 4. Sentencing

During the presentencing hearing, Appellant called two witnesses to testify about her personal circumstances and rehabilitative potential. Her aunt testified regarding Appellant's troubled upbringing, including her parents' and two sisters' longstanding substance abuse issues, her mother's criminal record and incarceration, and Appellant's role in providing financial support to her sisters and ill grandmother. A gunnery sergeant who recruited Appellant testified about her perseverance and enthusiasm in joining the Marine Corps. Appellant also made an unsworn statement and submitted two good character statements, various awards, and a fitness report.

Appellant further presented evidence that she had been the victim of two sexual assaults, the first during entry-level training and the second while assigned to an operational unit, as well as difficulties she experienced accessing consistent mental health care.

In accordance with the plea agreement, the military judge sentenced Appellant to a bad-conduct discharge, reduction to E-1, and confinement for two months.[6]

---

[5] In accordance with the plea agreement, the charges and specifications to which Appellant pleaded not guilty were withdrawn and dismissed.

[6] In accordance with the plea agreement, the military judge sentenced Appellant to two months of confinement for each guilty finding, to be served concurrently, for a total of two months of confinement.

The military judge recommended that the convening authority suspend the bad-conduct discharge for six months. In recommending suspension of the bad-conduct discharge, the military judge summarized in detail the mitigation evidence presented in Appellant's case:

> Evidence [Appellant] has been sexually assaulted twice while in service. Once by force while at MCT [Marine Combat Training] and once while incapacitated by a superior at her first unit; the evidence of her difficulties getting mental health treatment after her PCS or PCA to MCAS Miramar; [Appellant's] report of the stress over dealing with their sexual assaults in the legal process, contributing to her divorce and a miscarriage; evidence of [Appellant's] upbringing raised with three sisters by their grandmother due to her mother being in and out of jail and not knowing her father until she was 12 and him still not being her life; [Appellant's] report of loss of her stepfather, one brother to a workplace accident, and her friend from her unit who supported her through her dealing with her being sexually assaulted; evidence of her getting a GED to help support her grandmother and sisters before entering the Marine Corps; evidence [from her] former Commanding Officer, Colonel [Whiskey] regarding [Appellant].[7]

In her clemency request, Appellant asked the convening authority to suspend the bad-conduct discharge as recommended by the military judge. The convening authority considered the military judge's suspension recommendation, along with Appellant's clemency matters, but denied the request to suspend the bad-conduct discharge. The convening authority took no action on the findings or sentence.

*5. The Co-Actors*

The Statement of Trial Results lists LCpl Uniform's and PFC Foxtrot's cases as "companion cases."[8]

LCpl Uniform was charged at a special court-martial with multiple offenses spanning December 2023 through February 2024. The charges included use

---

[7] R. at 116-117; *see also* Statement of Trial Results at 1, 5.

[8] On 15 August 2025, we granted Appellant's motion to attach the Entry of Judgment, Statement of Trial Results, and Post-Trial Action from LCpl Uniform's case. *See United States v. Jessie,* 79 M.J. 437, 445 (C.A.A.F. 2020) (permitting consideration of extra-record materials when necessary to resolve issues that are "raised by materials in the record but not fully resolvable by those materials.").

and possession of lysergic acid diethylamide (LSD) and psilocybin mushrooms; conspiracies with Appellant to possess and distribute LSD and to violate a lawful general order; solicitations of fellow Marines to use controlled substances, and violations of lawful orders, in violation of Articles 81, 82, 92, and 112a, UCMJ.[9]

LCpl Uniform entered into a plea agreement with the convening authority. Consistent with the agreement, he was found guilty of four specifications: possession of LSD, use of LSD, possession of psilocybin mushrooms, and use of psilocybin mushrooms. All remaining charges and specifications were withdrawn and dismissed pursuant to the agreement.

In accordance with the plea agreement, the military judge imposed a non-discretionary sentence of reduction to E-1, confinement for one month, and a bad-conduct discharge. The military judge made no clemency recommendation. LCpl Uniform requested, as a matter of clemency, that the convening authority waive automatic forfeitures. The convening authority denied the request and took no action on the findings or sentence.

PFC Foxtrot was charged at a summary court-martial with two specifications of use of a controlled substance, one specification of possession of a controlled substance, and one specification of disorderly conduct, in violation of Article 112a and 134, UCMJ.[10] He entered into a plea agreement and, consistent with his pleas, was convicted of all charges and specifications. The summary court-martial sentenced him to thirty days of confinement, reduction to E-1, and forfeiture of two-thirds pay for one month. The summary court-martial considered evidence of PFC Foxtrot's cooperation with authorities during an ongoing investigation.

---

[9] 10 U.S.C. §§ 881, 882, 892, 912a.

[10] 10 U.S.C. §§ 912a, 934.

## II. DISCUSSION

### A. Appellant's sentence was not inappropriately severe.

*1. Standard of Review and Law*

We review matters of statutory interpretation de novo.[11] As an initial matter, we must determine which version of Article 66, UCMJ,[12] applies to this case, a matter disputed by the parties.

Article 66, UCMJ, governs this Court's authority to review sentences on appeal. Congress amended Article 66, UCMJ, in the National Defense Authorization Act for Fiscal Year 2022, adjusting the lens through which Courts of Criminal Appeals review sentencing.[13] For the reasons set forth below, we conclude that the amended version of the statute is inapplicable to Appellant's case.

The amended version of Article 66 applies only where all offenses resulting in guilt occurred on or after 28 December 2023.[14] Appellant was found guilty of two offenses, each alleging misconduct occurring between 1 December 2023 and 29 February 2024. Those dates are reflected in both the charge sheet and the EOJ. Accordingly, the guilty findings as entered into the record do not establish that all offenses occurred after the effective date required for application of the amended statute.

The Government nevertheless argues that the amended version of Article 66 should apply because Appellant stipulated that she committed the offenses between 26 January 2024 and 29 February 2024 and confirmed those dates during the providence inquiry.[15]

We reject this argument. Under Article 66(d)(1), UCMJ, this Court "may act only with respect to the findings and sentence as entered into the record

---

[11] *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017).

[12] 10 U.S.C. § 866.

[13] National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, §539E, 135 Stat. 1541, 1700-06 (2021).

[14] National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(f), 135 Stat. 1706 (2021).

[15] Appellee's Brief at 11; Pros. Ex. 1 at 3, 5; R. at 25–26, 39.

under [Article 60c, UCMJ]."[16] The guilty findings entered into the EOJ therefore control our statutory analysis.

Here, the EOJ reflects offense dates that do not place the guilty findings within the temporal scope (on or after 28 December 2023) of the amended statute. The Government's reliance on stipulations or providence admissions cannot override the findings as formally entered into the record. Moreover, it is well established that the Government controls the charge sheet.[17] The Government made no effort—before trial, at trial, or during post-trial processing—to amend the specification dates in the charge sheet. Having failed to do so, the Government may not now recast the findings on appeal to invoke a statutory framework that does not apply.

Having resolved the threshold statutory issue, we now turn to our review of Appellant's sentence. We review sentence appropriateness de novo.[18] This Court may only affirm "the sentence or such part or amount of the sentence as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[19] As our superior court recently stressed, our review of the sentence must be independent.[20] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[21] Our review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[22]

In making our assessment, we analyze the record as a whole.[23] That analysis necessarily includes consideration of an accused's plea agreement and the

---

[16] Article 60c, UCMJ, governs the EOJ and requires the military judge to "enter into the record of trial the judgment of the court." Article 60c(a)(1), UCMJ.

[17] *See, e.g., United States v. Simmons,* 82 M.J. 134, 141 (C.A.A.F. 2022); *United States v. Floyd,* 82 M.J. 821, 832 (N-M. Ct. Crim. App. 2022).

[18] *United States v. Lane,* 64 M.J. 1, 2 (C.A.A.F. 2006).

[19] Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

[20] *United States v. Spencer,* ___ M.J. ___, No. 25-0192/MC, 2026 CAAF LEXIS 143, at *5 (C.A.A.F. Feb. 9, 2026) (citing *United States v. Powell,* 49 M.J. 460, 463 (C.A.A.F. 1998)) (cleaned up).

[21] *United States v. Healy,* 26 M.J. 394, 395 (C.M.A. 1988).

[22] *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[23] *Healy,* 26 M.J. at 395–97.

inquiry into that agreement, as both constitute part of the record.[24] As our superior court recognized in *United States v. Arroyo*, "[a]n accused's own sentence proposal is a reasonable indication of the sentence's probable fairness to [her]."[25] At the same time, we retain "a duty to determine on [our] own whether the sentence agreed to by the parties is appropriate."[26]

In *United States v. Avellaneda,* we previously observed that "[a]lthough not dispositive, when an accused who is represented by competent counsel bargains for a specific sentence, that is strong evidence that the sentence is not inappropriately severe and it will likely not be disturbed on appeal."[27] We read that precedent in harmony with *Arroyo*—that a bargained-for sentence is reasonably indicative of probable fairness—while confirming that such an agreement does not relieve this Court of its independent obligation to determine sentence appropriateness.

*2. Analysis*

We conclude that Appellant's sentence is not inappropriately severe.

With the advice and assistance of counsel, Appellant negotiated a favorable plea agreement. In exchange for her guilty pleas, the convening authority dismissed 3 charges and 14 specifications and agreed to limit confinement to 2 months—well below the 1 year maximum authorized. The record reflects that Appellant entered into the agreement voluntarily and with full awareness of its terms. She affirmed under oath that she was satisfied with her counsel's advice and representation.

Appellant relies heavily on the military judge's clemency recommendation to argue that her bargained-for sentence was inappropriately severe. This Court recognizes that a convening authority may, but is not required to, approve a clemency recommendation from the military judge.[28]

---

[24] *Spencer*, ___ M.J. ___, 2026 CAAF LEXIS 143, at *6.

[25] *United States v. Arroyo*, 86 M.J. 89, 93 (C.A.A.F. 2025) (first alteration in original) (internal quotation marks omitted) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979) (plurality opinion)); *see also Spencer*, ___ M.J. ___, 2026 CAAF LEXIS 143, at *6 (quoting this language from *Arroyo*).

[26] *Id.*

[27] *United States v. Avellaneda*, 84 M.J. 656, 663 (N-M. Ct. Crim. App. 2024).

[28] Art. 60a(c)(1), UCMJ ("Upon recommendation of the military judge, as included in the Statement of Trial Results, together with an explanation of the facts supporting

Here, the convening authority considered and denied all clemency matters submitted, which included the military judge's suspension recommendation and supporting justification in the Statement of Trial Results. Although the military judge identified several mitigating factors leading to his recommendation that the convening authority suspend the bad-conduct discharge, the decision to grant clemency is a matter of command prerogative. As this Court has previously held, clemency involves bestowing mercy and is a function reserved to the convening authority rather than the military appellate courts, which do not have clemency power.[29]

Appellant's is not a case of purely personal drug use. Appellant affirmatively initiated and facilitated drug activity involving other Marines. She sought out another Marine to arrange a drug deal, met a drug dealer with that Marine, and purchased approximately 15 to 20 psilocybin mushrooms, a Schedule I controlled substance.[30] Her conduct reflected planning and coordination, not impulsive behavior.

Appellant acquired the controlled substance with the specific intent to "share the mushrooms with a group of Marines" and to "use the mushrooms together."[31] Her possession was distribution-oriented rather than limited to personal use. The scope of the misconduct thus extended beyond Appellant herself and was designed to involve additional Marines.

After completing the purchase, Appellant transported the psilocybin mushrooms onto the installation,[32] brought them into the barracks, and used them

---

the recommendation, the convening authority may suspend—(A) a sentence of confinement . . . (B) a . . . bad-conduct discharge . . . ."); *See also* R.C.M. 1109(f); *Avellaneda,* 84 M.J. at 661 ("The military judge's recommendation for suspension of part of a sentence is not binding on the convening authority.") (citation omitted).

[29] *Avellaneda*, 84 M.J. at 661–662.

[30] A Schedule I controlled substance is defined as a drug or other substance with a high potential for abuse, no currently accepted medical use in treatment in the United States, and a lack of accepted safety for use under medical supervision. 21 U.S.C. § 812(b)(1).

[31] Pros. Ex. 1 at 4.

[32] Wrongful introduction of a controlled substance is a separate offense under Article 112a, UCMJ. Appellant was neither charged with nor convicted of that offense, and we do not base our sentence review on any such uncharged misconduct. Rather, we consider the location and circumstances of Appellant's offenses—including that the possession and use occurred on a military installation and in the barracks—as part of the surrounding facts directly related to the offenses of which Appellant was convicted and properly before the Court for purposes of sentence appropriateness review.

there with another Marine. Bringing a Schedule I controlled substance onto a military installation and into the barracks directly undermines good order and discipline and exposes other service members to illegal drug activity in a setting central to unit morale, safety, and readiness.

Finally, Appellant committed these offenses while serving as a noncommissioned officer, a sergeant of Marines. In that role, she was entrusted with leadership responsibilities and charged with upholding and enforcing standards of good order and discipline. Rather than discharging that duty, Appellant instigated drug activity with one Marine and intended to involve others. Instead of leading her Marines away from misconduct, she sought to draw them into it.

Appellant's initiation of drug activity, her intent to distribute a Schedule I controlled substance to other Marines, her transportation and use of drugs in the barracks, and her leadership role demonstrate the appropriateness of her sentence.

In conducting our review, we carefully considered Appellant's case in mitigation including the evidence that Appellant was twice sexually assaulted, of her troubled family history, and good character testimony and exhibits.

Having reviewed the record as a whole and the briefs of the parties, we find that Appellant's sentence, adjudged in accordance with the plea agreement she signed, is appropriate for this offender and her offenses,[33] and is one that should be approved.

**B. Even assuming a disparity in Appellant's sentence from that of her purported co-actors, there are rational bases for the disparity.**

*1. Standard of Review and Law*

As noted above, we review sentence appropriateness de novo.[34] This Court's "power to review a case for sentence appropriateness . . . includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions."[35] We have "discretion to consider and compare" other "sentences when . . . reviewing a case for sentence appropriateness and relative uniformity."[36] We are not required "to engage in sentence comparison with specific cases except in those rare instances in which sentence appropriateness can be fairly

---

[33] *See Healy*, 26 M.J. at 395–96; *Snelling*, 14 M.J. at 268

[34] *Lane*, 64 M.J. at 2.

[35] *United States v. Swisher*, 85 M.J. 1, 4 (C.A.A.F. 2024) (quoting *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)).

[36] *Id.* (quoting *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001)).

determined only by reference to disparate sentences adjudged in closely related cases."[37]

We use the following analytical approach to analyze a claim that the sentences in two cases are disparate:

> An appellant bears the burden of demonstrating that any cited cases are "closely related" to his or her case and that the sentences are "highly disparate." If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity.[38]

"Closely related" cases involve "offenses that are similar in both nature and seriousness or which arise from a common scheme or design."[39] In assessing whether sentences are highly disparate, we are "not limited to a narrow comparison of the relative numerical values of the sentences at issue," but may also consider "the disparity in relation to the potential maximum punishment."[40]

Finally, co-actors are not entitled to similar sentences and disparity between them does not necessarily render one sentence inappropriate, "provided each military accused is sentenced as an individual."[41] This is so because the point of examining disparate sentences is not only to eliminate actual unfairness or injustice, but also to ensure the "appearance of fairness and integrity, without which the public, members of Congress, and service personnel will lose confidence in the military justice system."[42]

---

[37] *United States v. Noble*, 50 M.J. 293, 294 (C.A.A.F. 1999) (quoting *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (internal quotation marks and additional citation omitted)); *see also Swisher*, 85 M.J. at 4 (citing *United States v. Behunin*, 83 M.J. 158, 161–162 (C.A.A.F. 2023)).

[38] *Swisher*, 85 M.J. at 6–7 (quoting *Lacy*, 50 M.J. at 288).

[39] *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994); *see also Lacy*, 50 M.J. at 288 (examples of closely related cases include co-actors in a common crime, service members involved in a common or parallel scheme, or "some other direct nexus between the service members whose sentences are sought to be compared").

[40] *Lacy*, 50 M.J. at 289.

[41] *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (citations omitted).

[42] *Kelly*, 40 M.J. at 570.

*2. Analysis*

   *a. LCpl Uniform.*

Assuming, without deciding, that LCpl Uniform's case is closely related to Appellant's, we conclude that the sentences are not highly disparate. Moreover, even assuming disparity, we find the record reflects a rational basis for the relatively minor difference between sentences.

Appellant received a sentence that included two months of confinement; LCpl Uniform received one month. Aside from this difference in adjudged confinement, the sentences were otherwise identical, each including reduction to E-1 and a bad-conduct discharge. Both Appellant and LCpl Uniform were convicted of drug misconduct, and each faced a maximum authorized confinement of one year. Considering that both Marines were sentenced to a bad-conduct discharge and reduction to E-1, we do not view a one month difference in confinement as highly disparate.[43]

Regardless, there is a rational basis for any disparity in the sentences. Appellant did not merely use drugs; she purchased and possessed them with the intent to distribute them to other Marines. She did so while serving as a non-commissioned officer, entrusted with leadership responsibility and expected to set the standard for those under her charge. Rather than exercising that responsibility to quell drug misconduct, Appellant intended to spread it by involving other Marines. By contrast, LCpl Uniform, a junior Marine, was convicted of drug offenses limited to his own personal use and possession.[44] This difference in both conduct and responsibility provides a rational basis for the modest difference in confinement.

In addition, "[l]ike the appellant in *Durant*, Appellant's sentence, and its disparity with that of [her] co-actors, is partially the result of [her] own choices."[45] Both Appellant and LCpl Uniform entered into plea agreements, and both received the benefits of their respective bargains. Each agreement

---

[43] *See Durant*, 55 M.J. at 261–262 (citations omitted) (declaring "the military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual.")

[44] *See United States v. Quevedo*, No. 201200288, 2012 CCA LEXIS 695, at *6 (N-M. Ct. Crim. App. Oct. 31, 2012) (unpublished) (finding that "a distributor [of drugs] may be punished more harshly than a closely-related possessor") (citing *United States v. Harvey*, 12 M.J. 626, 628 (N.M.C.M.R. 1981) (citation omitted)).

[45] *United States v. Fuster*, No. 202000230, 2021 CCA LEXIS 503, at *8 (N-M. Ct. Crim. App. Sep. 29, 2021) (unpublished) (discussing *Durant*, 55 M.J. at 261–263).

required the imposition of a bad-conduct discharge and reduction to E-1. Appellant's agreement, however, required two months of confinement; LCpl Uniform's required only one month.[46]

### b. PFC Foxtrot

PFC Foxtrot's case was tried at a summary court-martial, where he was sentenced to reduction to E-1, confinement for 30 days, and forfeiture of two-thirds pay for one month. Assuming, without deciding, that Appellant's case and PFC Foxtrot's case are closely related and that the sentences are highly disparate, we conclude that a rational basis exists for the disparity.

As our superior court has recognized, "charging decisions by commanders in consultation with their trial counsel, as well as referral decisions by convening authorities after advice from their Staff Judge Advocates, can certainly lead to differences in sentencing."[47] In this case, the disparity in sentencing is explained by the convening authority's decision to refer PFC Foxtrot's case to a summary court-martial, a forum not authorized to adjudge a bad-conduct discharge or confinement in excess of one month.[48]

We therefore turn to whether the convening authority's differing referral decisions were reasonable, and we conclude that they were. PFC Foxtrot was charged with two specifications of drug use, one specification of drug possession, and one specification of disorderly conduct. By contrast, Appellant was charged with 16 separate offenses, including multiple instances of use, distribution, and possession with intent to distribute controlled substances; multiple conspiracies to possess and distribute controlled substances; solicitation of five other Marines to use a controlled substance; and violation of a lawful order.

---

[46] The existence of plea agreements in closely related cases is but one factor among many we consider and does not constitute a *per se* rational basis for sentence disparity.

[47] *Durant*, 55 M.J. at 261.

[48] R.C.M. 1301(d)(1). We observe that Appellant and PFC Foxtrot were tried at different levels of court-martial. This circumstance may implicate concerns regarding "differences in initial disposition rather than sentence uniformity." *United States v. Noble*, 50 M.J. at 295. Nevertheless, Appellant and PFC Foxtrot were each tried, convicted, and sentenced, and a record of findings and sentence exists in both cases for comparison. Accordingly, the issue of sentence uniformity remains properly before the Court. *See United States v. Blair*, 72 M.J. 720, 723–24 (Army Ct. Crim. App. 2013) (citing *Noble*, 50 M.J. at 293), *rev. denied*, 73 M.J. 209 (C.A.A.F. 2014); *see also Fuster*, 2021 CCA LEXIS 503 (comparing special court-martial and summary court-martial sentences); *United States v. Flowers*, No. 201700184, 2017 CCA LEXIS 712 (N-M. Ct. Crim. App. Nov. 21, 2017) (unpublished) (comparing special court-martial and summary court-martial sentences).

Given the number, scope, and severity of the charges against Appellant, when contrasted with the comparatively limited misconduct charged against PFC Foxtrot, we find good and cogent reasons for the convening authority's referral decisions.[49]

We also find that PFC Foxtrot's cooperation with authorities provides additional justification for referral to a lesser forum which necessarily resulted in a less severe sentence. The Summary Court-Martial Summary of Proceedings reflects that cooperation, including "a memorandum regarding his continuing voluntary assistance with an ongoing investigation" and an exhibit reflecting "trial counsel belief that [PFC Foxtrot] has been instrumental in said investigation for his cooperation."[50]

In addition, "[l]ike the appellant in *Durant*, Appellant's sentence, and its disparity with that of [her] co-actors, is partially the result of [her] own choices."[51] Both Appellant and PFC Foxtrot entered into plea agreements, and both received the benefits of their respective bargains. Appellant's agreement required the imposition of a bad-conduct discharge and two months of confinement; PFC Foxtrot's did not.[52]

Finally, as noted above, Appellant was a noncommissioned officer at the time of her misconduct, which included the intent to distribute drugs to other Marines. By contrast, PFC Foxtrot was an even more junior Marine than LCpl Uniform and, like LCpl Uniform, was convicted of drug offenses that did not involve intent to distribute to other Marines.[53]

For the reasons stated above, we conclude that Appellant's claim for sentence relief based on an inappropriate disparity of sentences is without merit.

---

[49] *See United States v. Stotler*, 55 M.J. 610, 612 (N-M. Ct. Crim. App. 2001) (quoting *Kelly*, 40 M.J. at 570) (reasoning that "leniency towards one accused does not necessarily flow to another, nor should it," and "[d]isparity that results from a convening authority's . . . judgment does not necessarily entitle a service person to some form of appellate relief."); *see also Blair*, 72 M.J. at 725–36 (quoting *Kelly*, 40 M.J. at 570).

[50] Summary Court-Martial Summary of Proceedings at 2.

[51] *Fuster*, 2021 CCA LEXIS 503, at *8 (discussing *Durant*, 55 M.J. at 261–263).

[52] The existence of plea agreements in closely related cases is but one factor among many we consider and does not constitute a *per se* rational basis for sentence disparity.

[53] *See Quevedo*, 2012 CCA LEXIS 695, at *6 (finding that "a distributor [of drugs] may be punished more harshly than a closely-related possessor") (citing *Harvey*, 12 M.J. at 628).

After conducting an "individualized consideration of the particular [appellant] on the basis of the nature and seriousness of the offense[s] and the character of the offender"[54] in our effort to "assur[e] that justice is done and that the [appellant] gets the punishment [s]he deserves,"[55] we conclude that Appellant's sentence, both segmented and as a whole,[56] is appropriate for this offender and her offenses,[57] and should be approved.

### III. CONCLUSION

After careful consideration of the record and submissions of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[58] However, we note that the EOJ omits the pleas and dispositions to certain charges and specifications.[59] Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of her proceeding.[60] In accordance with R.C.M. 1111(c)(2), we modify the EOJ and direct that it be included in the record.

The findings and sentence are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[54] *Snelling*, 14 M.J. at 268 (cleaned up).

[55] *Healy*, 26 M.J. at 395.

[56] *See United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

[57] *Snelling*, 14 M.J. at 268.

[58] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.

[59] The EOJ omits: Specification 4 of Charge II; Charge III and Specifications 1–5 thereunder; and Charge IV and the Sole Specification thereunder. *See* R.C.M. 1111(b) (requiring EOJ to include, for each charge referred to court-martial, a summary of each charge and specification, the plea of the accused, and the disposition of each charge, as well as the sentence awarded); *see also United States v. Wadaa*, 84 M.J. 652, 655 (N-M. Ct. Crim. App. 2024) (setting forth minimal requirements for EOJs to properly set forth a summary of the charges and specifications); *United States v. Booker*, 83 M.J. 595, 598 (N-M. Ct. Crim. App. 2023).

[60] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202400482 |
| v. | **ENTRY OF JUDGMENT** |
| **Lauren C. PERRY**<br>Sergeant (E-5)<br>U.S. Marine Corps<br>*Accused* | *As Modified on Appeal*<br><br>**24 April 2026** |

On 29 August 2024, the Accused was tried at Marine Corps Air Station Miramar, San Diego, California, by a special court-martial, consisting of a military judge sitting alone. Military Judge David C. Segraves presided.

## FINDINGS

The following are Sergeant Perry's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:** **Violation of Article 112a, UCMJ, 10 U.S.C. § 912a.**

> *Plea:* Guilty.
> *Finding:* Guilty

**Specification 1:** **Wrongful possession of some amount of psilocybin mushrooms, a Schedule I controlled substance, with the intent to distribute the said controlled substance, between on or about 1 December 2023 and on or about 29 February 2024.**

> *Plea:* Guilty.
> *Finding:* Guilty

**Specification 2:** **Wrongful use of some amount of psilocybin mushrooms, a Schedule I controlled substance, between on or about 1 December 2023 and on or about 29 February 2024.**
> *Plea:* Guilty.
> *Finding:* Guilty

**Specification 3:** **Wrongful distribution of some amount of psilocybin mushrooms, a Schedule I controlled substance, between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 4:** **Wrongful possession of some amount of lysergic acid diethylamide (LSD), with the intent to distribute the said controlled substance, between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 5:** **Wrongful use of LSD between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 6:** **Wrongful distribution of LSD between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Charge II:** **Violation of Article 81, UCMJ, 10 U.S.C. § 881.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 1:** **Conspiracy to possess some amount of psilocybin mushrooms, a Schedule I controlled substance, between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 2:** **Conspiracy to distribute some amount of psilocybin mushrooms, a Schedule I controlled substance, between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

2

*Finding:* Withdrawn and dismissed.

**Specification 3:** **Conspiracy to possess LSD between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 4:** **Conspiracy to distribute LSD between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Charge III:** **Violation of Article 82, UCMJ, 10 U.S.C. § 882.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 1:** **Solicitation to use a controlled substance between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 2:** **Solicitation to use a controlled substance between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 3:** **Solicitation to use a controlled substance between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 4:** **Solicitation to use a controlled substance between on or about 1 December 2023 and on or about 29 February 2024.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed.

**Specification 5:** Solicitation to use a controlled substance between on or about 1 December 2023 and on or about 29 February 2024.

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed.

**Charge IV:** Violation of Article 92, UCMJ, 10 U.S.C. § 892.

> *Plea:* Not Guilty.
> *Finding:* Withdrawn and dismissed.

**Specification:** Violation of a lawful no contact order issued by Lieutenant Colonel S.D. between on or about 21 February 2024 and on or about 7 May 2024

> *Plea:* Not Guilty.
> *Finding:* Withdrawn and dismissed.

# SENTENCE

On 29 August 2024, a military judge sentenced Sergeant Perry to the following:

**Confinement for a total of two months.**

> *Specification 1 of Charge I: confinement for two months.*
>
> *Specification 2 of Charge I: confinement for two months.*
>
> *All terms of confinement will run concurrently.*

*Sergeant Perry received 8 days of pretrial confinement credit.*

**Reduction to E-1.**

**Bad-Conduct Discharge.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

4